613 P.2d 1266

The STATE of Arizona, Appellee,

v.

Edward Francis MULLIGAN, Appellant.

No. 4893.

Supreme Court of Arizona,
In Banc.

June 30, 1980.

**212**

Robert K. Corbin, Atty. Gen. by William J. Schafer, III and David R. Cole, Asst. Attys. Gen., Phoenix, for appellee.

Thomas Alton, P. C., Sedona, for appellant.

CAMERON, Justice.

This is an appeal by defendant E. Francis Mulligan, from a jury verdict and judgment of guilt to the crimes of submitting a false insurance claim, A.R.S. § 44–1220; grand theft through false pretenses, A.R.S. § 13–661; and arson with intent to defraud, A.R.S. § 13–235, and sentences of three years on each count, to run concurrently. We have jurisdiction pursuant to Rule 47(e)(5), Rules of the Supreme Court, 17A A.R.S.

We are asked to answer five questions on appeal:

1. Did the trial court err in denying defendant's motion to dismiss the grand jury indictments?

2. Did the trial court err in denying defendant's motion for change of venue?

3. Was evidence of a prior bad act inadmissible?

4. Did the court commit reversible error in failing to hold a Rule 11 hearing?

5. Did the court err in sentencing defendant for six counts of criminal contempt?

The facts necessary for a disposition of these questions on appeal are as follows. Defendant Edward Francis Mulligan was employed for seven years by the Arizona Daily Sun, in Flagstaff, Arizona. In 1975, he left that position to open a weekly newspaper, The Flagstaff News, of which he became the owner and publisher. A fellow employee of the Daily Sun, Joe Blount, left the Sun at that time to become an editor of the News.

On 21 December 1976, there was a fire at the Flagstaff News, which led to the conviction of defendant for arson and fraudulent insurance claims. Joe Blount, who was granted immunity by the State, testified at trial that he and defendant had planned the fire, and that he had set the fire while defendant left town so as to have an alibi. He testified how the defendant had prepar-

ed and filed claims to the insurance company for items the News had never owned and which were never damages by the fire. Mr. Blount also testified to an earlier fire, in April of 1976, which he and defendant planned and which he and another editor set. No prosecution was ever brought in this earlier fire.

The proceedings were fraught with continuances due mainly to defendant's inability to retain counsel or to his health. The three-week trial began on 30 January 1979 with defendant representing himself. The court appointed a legal advisor who was present throughout the trial and argued motions on behalf of the defendant.

The jury returned a verdict of guilty to all three counts, and defendant was sentenced to three years in prison on each count, to run concurrently.

### GRAND JURY INDICTMENTS

■ Defendant contends that the trial court erred in denying his challenge to the grand jury indictments because the grand jury was not composed of a sufficient number of qualified jurors, and that the grand jury considered inadmissible evidence in returning the indictments. The grand jury transcripts were filed on 8 March and 10 April 1978. Defendant did not challenge the grand jury returns until 11 August 1978.

We have stated:

" * * * We do not reach the merits of this issue, as we agree with the trial court that the defendant's motion was untimely. Pursuant to 17 A.R.S., Rules of Criminal Procedure, rule 12.9a, a grand jury proceeding may be challenged only by a motion for a new finding of probable cause. Subsection b. of the same rule states that such a motion may be filed no later than twenty-five days after the transcript and minutes of the grand jury proceeding have been filed. A defendant waives his objections to the grand jury proceeding by failing to comply with the

timeliness requirement. (citation omitted)" *State v. Smith*, 123 Ariz. 243, 247–48, 599 P.2d 199, 203–04 (1979).

In the instant case, the defendant also failed to timely challenge the grand jury indictments. Therefore, we find no error in the denial of the challenge to the returns of the grand jury. *State v. Smith*, supra; *State v. Lopez*, 27 Ariz.App. 408, 555 P.2d 667 (1976).

### CHANGE OF VENUE

■ Before trial and at various times throughout trial, defendant moved for a change of venue, claiming that the pretrial publicity was so prejudicial that it would be impossible to obtain a fair trial in Coconino County. The fire at The Flagstaff News and the proceedings against defendant were, in fact, the subjects of extensive news coverage in Flagstaff and throughout the state. Much of the publicity came from defendant's own newspaper, which carried numerous articles and editorials regarding the alleged arson.

After oral argument of defendant's initial motion,[1] the court made a specific finding that the publicity in this case was not outrageously prejudicial or inflammatory. As the defendant presented no examples of the prejudicial coverage of the case, the judge relied on his personal observation of television and news articles. The court noted the coverage of this case was of an informative nature and was not the sort of crusading editorial calling for defendant's conviction proscribed by the court in *Sheppard v. Maxwell*, 384 U.S. 333, 86 S.Ct. 1507, 16 L.Ed.2d 600 (1966).

The judge also carefully voir dired the potential jurors on the subject of publicity, concluding by asking:

"If any of you feel that you would not be able to approach this case with the degree of impartiality that I have been talking about, would any of you who have been called forward ask to be excused because

---

1. It was only on appeal that defendant presented specific articles in support of his claim of undue publicity. As this evidence was not be-

fore the trial court, we do not consider it in our determination of this appeal. *West v. Baker*, 109 Ariz. 415, 510 P.2d 731 (1973).

you don't think that you could be impartial or open minded?"

Of the 34 jurors examined, four admitted they could not be impartial as to Mr. Mulligan's guilt and were excused. Several others excused themselves due to familiarity with witnesses. None of the ten jurors finally chosen asked to be excused for partiality or familiarity.

The judge also admonished the jury after its selection not to be swayed by publicity about the case, and these admonitions were repeated at the end of nearly every session of court.

Rule 10.3 of the Arizona Rules of Criminal Procedure, 17 A.R.S., provides for change of venue. Rule 10.3(b) states:

"b. *Prejudicial Pretrial Publicity.* Whenever the grounds for change of place of trial are based on pretrial publicity, the moving party shall be required to prove that the dissemination of the prejudicial material will probably result in the party being deprived of a fair trial."

[3] A defendant seeking a change of venue, then, has the burden of proof to show "the publicity has been so extensive and so prejudicial as to create the probability that he will be denied a fair trial." *State v. Smith*, 116 Ariz. 387, 569 P.2d 817 (1977). See also, *Phoenix Newspapers, Inc. v. Jennings*, 107 Ariz. 557, 490 P.2d 563 (1971); *State v. McGee*, 91 Ariz. 101, 370 P.2d 261, cert. denied 371 U.S. 844, 83 S.Ct. 75, 9 L.Ed.2d 79 (1962).

■■■ This burden may be met in several ways. In some unusual cases, the publicity may be so outrageous that prejudice to the defendant may be presumed. *State v. Smith*, 123 Ariz. 231, 236, 599 P.2d 187, 192 (1979). Thus, where publicity so pervades the proceedings so as to create a "carnival atmosphere," *Sheppard v. Maxwell*, supra, defendant is entitled to a change of venue without a showing of identifiable prejudice. *Estes v. Texas*, 381 U.S. 532, 85 S.Ct. 1628, 14 L.Ed.2d 543 (1965). See also *Murphy v. Florida*, 421 U.S. 794, 95 S.Ct. 2031, 44 L.Ed.2d 589 (1975); *Rideau v. Louisiana*, 373 U.S. 723, 83 S.Ct. 1417, 10 L.Ed.2d 663 (1963).

■■■ In most cases, however, the defendant must show identifiable prejudice resulting from the publicity. *Estes v. Texas*, supra. Defendant must make it affirmatively appear that there is such a feeling of prejudice in the community as will be reasonably certain to prevent a fair and impartial trial. *State v. Hunt*, 2 Ariz.App. 6, 21, 406 P.2d 208, 223 (1965).

■■■ It is not required that jurors be totally ignorant of the facts of the case. *Irvin v. Dowd*, 366 U.S. 717, 81 S.Ct. 1639, 6 L.Ed.2d 751 (1961). Rather, the test is whether the juror can lay aside that knowledge and render the verdict based solely upon evidence presented at trial:

"Furthermore, a change of venue is not required unless the defendant can demonstrate that the publicity has reached the jury panel and that jurors both have formed and are unable to lay aside preconceived notions regarding the defendant's guilt. *State v. Endreson*, 109 Ariz. 117, 506 P.2d 248 (1973)." *State v. Smith*, supra, 116 Ariz. at 390, 569 P.2d at 820. See also *State v. Gretzler*, 126 Ariz. 60, 612 P.2d 1023 (No. 3750, filed 21 April 1980); *State v. Lacquey*, 117 Ariz. 231, 571 P.2d 1027 (1977); *Northern California Pharmaceutical Association v. United States*, 306 F.2d 379 (9th Cir.), cert. denied 371 U.S. 862, 83 S.Ct. 119, 9 L.Ed.2d 99 (1962).

■■■ Whether to grant or deny a motion for change of venue based on pretrial publicity is within the sound discretion of the trial court. *State v. Reid*, 114 Ariz. 16, 559 P.2d 136 (1976), cert. denied 431 U.S. 921, 97 S.Ct. 2191, 53 L.Ed.2d 234 (1977); *State v. Schmid*, 107 Ariz. 191, 484 P.2d 187 (1971). The trial court's ruling will not be overturned on appeal absent a clear abuse of discretion and evidence that the ruling has prejudiced the defendant. *State v. Smith*, supra, 116 Ariz. at 390, 569 P.2d at 820. We find no error.

### PRIOR BAD ACT AND TESTIMONY OF AN ACCOMPLICE

Defendant was indicted and tried based upon a fire that occurred on 21 December

1977.  The State introduced, over defendant's objection, evidence regarding a similar fire at defendant's newspaper office in April of 1976.  At trial, the State presented evidence of the first fire through the testimony of Joe Blount, who had admitted to setting both fires.  He testified that he and another newspaper employee set the first fire and that he and defendant had made and collected on fraudulent claims to the insurance company.

On appeal, defendant contends that the evidence of the April 1976 fire was a prior bad act and therefore inadmissible.  Defendant further contends that even if it was admissible, it should be precluded as uncorroborated testimony of an accomplice pursuant to statute (A.R.S. § 13–136) in effect at the time of the April 1976 fire, but repealed prior to the fire for which defendant was being tried.

### Prior Bad Act

■  Evidence of other crimes which the defendant may have committed is prejudicial and usually inadmissible.  *State v. Tostado*, 111 Ariz. 98, 523 P.2d 795 (1974);  Rule 404(b), Rules of Evidence, 17A A.R.S.  This evidence is generally excluded because it tends to draw the jury's attention from the real issues on trial and to lead them unconsciously to render their verdicts in accordance with their view of defendant as a "bad man."  *State v. Deschamps*, 105 Ariz. 530, 468 P.2d 383 (1970);  *State v. Hughes*, 102 Ariz. 118, 426 P.2d 386 (1967).

There are exceptions to the general rule disallowing such evidence.  Rule 404(b), supra, codifies what has long been the rule in Arizona.  It states:

"*Other crimes, wrongs, or acts.*  Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith.  It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."  See also *State v. Rose*, 121 Ariz. 131, 589 P.2d 5 (1978);  *State v. Mosley*, 119 Ariz. 393, 581 P.2d 238 (1978).

■  The trial court in this case found evidence of the first fire to fall within this exception and we agree.  The similarity in the manner in which the prior fire was set and the one charged herein evidences a common scheme or plan which shows intent or, at the very least, absence of mistake.  In both cases, defendant and Joe Blount planned the fire.  In both cases, Joe Blount spread flammable liquids around the office and set the fire, and in both cases, defendant submitted blatantly fraudulent insurance claims for fire damage.  We find no error.  *State v. Rose*, supra;  *State v. Fierro*, 107 Ariz. 479, 489 P.2d 713 (1971).

### Testimony of an Accomplice

■  Defendant claims his conviction based upon the April 1976 fire was subject to A.R.S. § 13–136 which was repealed 24 June 1976, prior to the setting of the second fire in December of 1976.  That statute reads:

"A conviction shall not be had on testimony of an accomplice unless the accomplice is corroborated by other evidence which, in itself and without aid of the testimony of the accomplice, tends to connect the defendant with the commission of the offense.  The corroboration is not sufficient if it merely shows the commission of the offense or the circumstances."

This statute was repealed prior to the crime for which defendant was being tried, and we do not believe it applies to the conviction in this case.  Even if it did, we would not find the statute controlling as Joe Blount's testimony was amply corroborated by the testimony of Brian Whitney.  We find no error.

### RULE 11 HEARINGS

Defendant claims reversible error because no Rule 11 hearing was held to determine competency.  Prior to trial, the State made a motion, pursuant to Rule 11, Arizona Rules of Criminal Procedure, 17 A.R.S., that defendant be ordered o submit to mental and physical examination.  See *Pate v. Rob-*

*inson*, 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966). The trial court granted the motion and appointed Dr. Warren Gorman as the State's expert. The court also appointed a second expert, Dr. Herb Collier, pursuant to defendant's request for a mental health expert of his own choosing.

Dr. Gorman stated he found defendant sane at the time of the offense and fully capable of standing trial and representing himself at the trial. As there was no contradictory evidence presented at that time by defendant, the court accepted Dr. Gorman's finding that there was no competency problem. Defendant did not object to the procedure followed by the court or the court's ruling.

On the ninth day of trial, defendant submitted to the court a report from Dr. Collier, stating that the defendant was incompetent to stand trial. With this new evidence available, the court apparently felt a determination of competency was necessary and inquired as to the feasibility of a full hearing. Since neither Dr. Collier nor Dr. Gorman were available for a hearing on the matter, the State offered to submit the Rule 11 proceeding to the court on the record and the written doctors' reports as allowed by Rule 11.5(a). Defendant did not object, and the court ruled that defendant was competent on that basis.

Defendant now claims that because he did not stipulate in writing to submit the written report for consideration by the court, Rule 11.5(a), it was reversible error not to hold a hearing. We disagree.

Rule 11.5, Arizona Rules of Criminal Proceeding, 17 A.R.S., describes the type of hearing a court must give defendant after the completion of the mental examinations:

"Rule 11.5 Hearing and orders

"a. Hearing. When the examinations have been completed, the court shall hold a hearing to determine the defendant's competency. The parties may introduce other evidence regarding the defendant's mental condition, or by *written stipulation*, submit the matter on the experts' reports." (emphasis added)

We have held the requirement that a stipulation under Rule 11.5(a) be written and signed by the parties not to be of constitutional magnitude. *State v. Blier*, 113 Ariz. 501, 557 P.2d 1058 (1976). In examining the purpose and results of Rule 11.5(a), we stated:

"A Rule 11.5(a) stipulation requires a writing signed by 'the parties,' merely to clarify and preserve the record of their intentions to waive a formal competency hearing. * * * [W]e hold that it is not reversible error for the parties to fail to sign a written stipulation when there is sufficient evidence in the record to show the mutual intention of the parties to submit the competency issues on the experts' reports." *State v. Blier*, supra, 113 Ariz. at 504–05, 557 P.2d at 1061–62.

Here we find sufficient indication of intent of the parties. Both the State and defendant's legal advisor were aware of the problem defendant had created by presenting the report so late into the trial. Defendant did not move for a full Rule 11 hearing when he presented Dr. Collier's report; neither did he or his legal advisor object to the court's decision to make a determination on the written reports. We find no error.

## CONTEMPT CITATIONS

During proceedings, defendant received six contempt citations. A hearing was held regarding the first five citations on 23 February 1979, and defendant was sentenced to 15 days for the first citation and two days each for citations 2 through 5, with sentences to run concurrently. Citation Number 6 was presented in minute orders on 6 March 1979, and defendant was sentenced on 26 March 1979 to six months in the Coconino County Jail.

Defendant, in his notice of appeal, attempted to appeal from the orders finding him in contempt, as well as the judgments of guilt in his criminal charges. We find no authorization for such an appeal from the contempt charges, either by statute or rules of this court. Findings of contempt are non-appealable orders. As our Court of Appeals has stated:

"We have reviewed the provisions of Rule 33, entitled 'Criminal Contempt', and Rule 31, entitled 'Appeals from Superior Court'. Our review of these rules has convinced us that they have no applicability to appeal rights in contempt matters. Rule 33 merely reflects a codification of previous Arizona and federal decisional law relating to *trial court procedures* in contempt matters. Rule 31 sets forth the procedures governing appeals in criminal matters, and does not purport to extend the right of appeal to matters which were not previously appealable under Arizona law. Therefore, the principles enunciated in this Court's opinion in *Van Baalen, supra*, are still viable, and require that this appeal be dismissed for lack of jurisdiction." *Haggard v. Superior Court*, 26 Ariz.App. 162, 163, 547 P.2d 14, 15 (1976).

See also *Van Baalen v. Superior Court*, 19 Ariz.App. 512, 508 P.2d 771 (1973).

Defendant's review remedy is by special action, *Weiss v. Superior Court*, 12 Ariz.App. 527, 472 P.2d 950 (1970), or, if imprisoned, habeas corpus, *Herzog v. Reinhardt*, 2 Ariz.App. 103, 406 P.2d 738 (1965). The purported appeals from the findings of contempt are dismissed.

Judgment affirmed.

STRUCKMEYER, C. J., HOLOHAN, V. C. J., and HAYS and GORDON, JJ., concur.