726 P.2d 212

**The STATE of Arizona, Appellee,**

v.

**Augustine Tony GUILLEN, Appellant.**

**No. 2 CA–CR 3940.**

Court of Appeals of Arizona, Division 2, Department A.

May 1, 1986.

Review Denied Sept. 30, 1986.

**116**

Robert K. Corbin, Atty. Gen. by Eric J. Olsson, Tucson, for appellee.

Bilby & Shoenhair, P.C. by John P. Arnold, Tucson, for appellant.

HOWARD, Presiding Judge.

Appellant, found guilty by a jury of one count of child molestation and one count of child abuse, was sentenced to concurrent prison terms of 10.5 years on the molestation conviction and 1.5 years on the child abuse conviction. He contends the trial court erred in admitting testimony concerning his interview by a detective with the South Tucson Police Department and in refusing to sever the two counts for trial. We affirm.

In January 1984, Pima County Child Protective Services was informed that the victim in this case, a 10 year-old girl, had been picked up by the South Tucson Police Department and transported to Casa de los Ninos, a shelter utilized by the agency. Emily Ravits was assigned the case and she interviewed the child. She observed that the child had severe bruising; there were black and blue marks covering her upper thigh and buttock areas. She talked to the child about the bruises and also discovered that the child had been sexually abused. As a result of the interview, Ravits spoke to the mother and the father of the child, and her brother. When Ravits told appellant that his daughter had accused him of an on-going physical relationship consisting of anal and oral intercourse, he remained silent. At one point in the interview she asked appellant whether his

son might have learned how to have sex by watching him have sex with the girl; he responded, "I suppose so." He then suddenly departed the office, and appeared to be very upset.

Officer Doug Corkhill, a detective with the South Tucson Police Department, began his investigation of the victim's runaway on January 28, 1984. After contacting Ravits he interviewed the victim. He then spoke with appellant's wife and advised her that he wanted to talk to her husband in reference to the case. The appellant voluntarily went to the South Tucson Police Department the next day. Prior to taping the interview, Corkhill advised appellant of his "Miranda rights." Appellant told Corkhill that he understood these rights and agreed to waive them. Corkhill then told appellant that his daughter had accused him of molesting her over the past year and described the nature of the sexual conduct. Appellant denied the accusation. Corkhill asked him again if he had molested his daughter and appellant said that he did not think so. During the interview, appellant requested to talk with Sal Baldenegro, who apparently operated a counseling service. Appellant said that he wanted to go and talk to him at his office on north Church Avenue. Corkhill then told appellant that he was stalling and it was not going to help him. Corkhill continued the conversation and asked appellant if he could have molested his daughter. Appellant sighed and said:

"I don't ... You know, I don't ... not in my ... Not in my right state of mind, I don't think so! You know, I don't know, man! In my right state of mind, I don't think so.... No ... I mean, NO, you know, I mean No!"

Appellant was examined by Dr. Joseph Geffen, a psychologist. Dr. Geffen testified that appellant had a verbal I.Q. of 82, which is slightly above the cut-off point for borderline retardation. He also testified that appellant had a non-verbal I.Q. score of 101, with an overall combined I.Q. of 88, which is below the low average level. Dr. Geffen concluded that appellant had a

learning disability which had gone undetected in childhood. He concluded that, in a stressful situation, appellant's ability to carry on a conversation declined and it was his opinion that the statement appellant gave Corkhill was not a voluntary and informed statement.

Geffen's testimony was contradicted by the state's psychological expert, Dr. Burkholder, who testified that appellant was evasive about the charges against him. She also testified that her interview with appellant and the results of the test she gave him indicated that he had no trouble understanding questions about the alleged molestations and that his intellectual capacity would not prevent him from denying the accusations.

The victim also testified at trial. She testified that she had been having anal and oral intercourse with her father since she was six years old. Due to the repeated molestations that occurred as often as three times a week over the years, she stayed away from home as much as possible, even without permission. She testified that appellant threatened to hit her if she did not keep quiet while he committed the molestations. On one occasion, after she had been away from the house without permission, appellant struck her 45 times with a belt. The victim told her mother and grandmother what her father was doing to her but the women accused her of lying and accused her of trying to break up the family. Violet Gonzales testified that just prior to the run away in January, she met the victim who told her of her plight. Gonzales said that she would try to help her, but before she could do anything, appellant came on the scene and dragged the victim away by her hair.

Appellant contends that the totality of circumstances show that the trial court erred in denying his motion to suppress the statements made to Corkhill. The state contends that the interview by Corkhill was non-custodial in nature and that appellant's statements do not invoke the constitutional voluntariness strictures. In the alternative, the state argues that appellant voluntarily and intelligently waived his **Miranda** rights.

For the purposes of this opinion, we assume, but do not decide, that the interview was custodial. The trial court must look at the totality of the circumstances in evaluating the voluntariness of a confession and, absent a clear and manifest error, the trial court's ruling will not be overturned on appeal. *State v. Graham*, 135 Ariz. 209, 660 P.2d 460 (1983). In considering the totality of the circumstances here, the trial court did not abuse its discretion. The testimony as to the effect of appellant's I.Q. was conflicting and the trial court had the opportunity to hear appellant testify at the suppression hearing and evaluate for itself appellant's ability to waive his Miranda rights. In *Fare v. Michael C.*, 442 U.S. 707, 99 S.Ct. 2560, 61 L.Ed.2d 197 (1979), the court held that a request to see a probation officer did not act, per se, to cut off the right of the police to continue questioning the defendant. The court stated:

" ... The Court in *Miranda* recognized that 'the attorney plays a vital role in the administration of criminal justice under our Constitution.' 384 U.S., at 481, 86 S.Ct., at 1631. It is this pivotal role of legal counsel that justifies the *per se* rule established in *Miranda*, and that distinguishes the request for counsel from the request for a probation officer, a clergyman, or a close friend...." 442 U.S. at 722, 99 S.Ct. at 2570, 61 L.Ed.2d at 210–211.

Just as a request for a probation officer does not, per se, terminate the right to interrogate, neither did appellant's request to see Baldenegro terminate the right to interrogate. The appellant testified at the suppression hearing and nowhere in his testimony did he claim that he intended, by requesting to talk to Baldenegro, to cut off all interrogation and remain silent.

As far as the denial of the severance is concerned, Rule 13.3(a)(2), Rules of Criminal Procedure, 17 A.R.S., provides that offenses may be joined in an indictment, information or complaint, if they are

" ... otherwise connected together in their commission...." The beatings here were a result of the victim's refusal to come home because of the molestations. They were thus connected in their commission within the meaning of the rule. Appellant had the burden of showing, at the time of his motion, that he would be prejudiced if the trial court refused to grant separate trials. This burden is not met where, as here, even if there had been separate trials, evidence as to one set of charges would have been admissible on the other set, as part of the complete picture. *State v. Via*, 146 Ariz. 108, 704 P.2d 238 (1985), cert. denied, —— U.S. ——, 106 S.Ct. 1268, 89 L.Ed.2d 577 (1986). If the child abuse charge had been separately tried, evidence concerning the molestations would have been admissible to complete the story, in other words, to show why the beatings were being administered and to dispel any defense contention that the marks which the victim had on her body were part of ordinary and usual parental discipline.

*Affirmed.*

HATHAWAY, C.J., and FERNANDEZ, J., concur.