754 P.2d 1141

**STATE of Arizona, Appellee,**

v.

**Lee Artis BEFFORD, Appellant.**

**No. CR–86–0326–AP.**

Supreme Court of Arizona.

May 5, 1988.

Robert K. Corbin, Atty. Gen. by William J. Schafer, III, Mark F. Aceto, Janet Keat-

**38**

ing, Asst. Attys. Gen., Phoenix, for appellee.

Law Office of Rubin Salter, Jr. by Manuel H. Garcia, Tucson, for appellant.

FELDMAN, Vice Chief Justice.

Defendant, Lee Artis Befford, appeals from convictions for nine offenses committed within a twenty-four hour period, beginning with his escape from custody at the Pima County Courts Building on November 19, 1985. Befford's sentences include six life terms. He charges two errors on appeal: (1) that the trial court erred in denying his motion for a change of venue based on the publicity generated by his escape, and (2) that the trial court erred in granting the state's motion to consolidate the escape and post-escape charges against him. Befford also claims that he was denied the effective assistance of counsel. We have jurisdiction pursuant to Ariz. Const. art. 6, § 5(3) and A.R.S. §§ 13-4031 and -4035.

## I. FACTS

On November 19, 1985, defendant appeared in the Pima County Superior Court for a pretrial conference in an unrelated criminal case. He was at the time an inmate of the Pima County Jail. As a deputy sheriff escorted him from the courthouse, he managed to disarm the officer during an elevator ride. Then, pointing the gun at the officer and threatening to kill him if he disobeyed, defendant ordered the officer to remove defendant's handcuffs and to cuff himself to the elevator door. When the door opened, defendant jumped out and disappeared.

He did not reappear until eleven o'clock that night when he came to the door of Pablo Ramirez's southside Tucson home, asking to use a telephone directory. Ramirez not only assented, but offered defendant the use of his phone and served him a beer. As the two sat talking, defendant asked Ramirez for a knife to remove a splinter. Then, catching Ramirez unaware, defendant jumped him and, holding the knife to Ramirez's neck, searched Ramirez's pockets and the drawers and closets of his home. When he came upon a rifle in one of the closets, defendant forced Ramirez to load it. Then, while he held Ramirez at gunpoint on his bed, defendant continued to ransack the drawers. Finding a bank card, he announced his plan to accompany Ramirez to his bank to make a withdrawal. As they walked through the living room, defendant ordered Ramirez to carry the television out to his car. Once outside, Ramirez dropped the television and ran. Defendant fled, taking Ramirez's rifle, his wristwatch, and a cap.

Defendant next reappeared at a Tucson convenience store at about 1:30 the following morning. Now armed with Ramirez's loaded rifle, he ordered Laurel Brown, the store clerk and its only occupant, to empty the cash register or "he would blow [her] away." Reporter's Transcript (RT), Sept. 2, 1986, at 50. Brown put the register's contents into a bag, to which defendant had her add a carton of cigarettes and a lighter. He then ordered her to her car and drove her out of Tucson to Arizona City. There he turned her loose in a cotton field, keeping the bag, its contents, and the car. Approximately twenty-four hours later, following extensive news coverage of his escape, defendant was captured in Brown's car in California.

For his acts at the courthouse, defendant was charged with first degree escape, A.R.S. § 13-2504, kidnapping, A.R.S. § 13-1304, and dangerous or deadly assault by a prisoner, A.R.S. § 13-1206. For the acts involving Pablo Ramirez, defendant was charged with armed robbery, A.R.S. § 13-1902, kidnapping, A.R.S. § 13-1304, and first degree burglary, A.R.S. § 13-1508. For the acts involving Laurel Brown, he was charged with armed robbery, A.R.S. § 13-1902, kidnapping, A.R.S. § 13-1304, and theft by control, A.R.S. § 13-1802.

The trial court granted the state's motion to consolidate these charges, and a jury convicted defendant on all counts. It also found each of the offenses to be of a dangerous nature. Because the second and third groups of crimes were committed after defendant had escaped from confine-

ment, he was sentenced for these crimes alone to six life terms, three to be served consecutively to all other sentences, three to be served concurrently. *See* A.R.S. § 13–604.02(A). From his convictions defendant appeals.

## II. DISCUSSION

A. Did the Trial Court Err in Denying Defendant's Motion for a Change of Venue?

Defendant claims that the coverage given his escape and recapture by the news media was so "outrageous" that a fair trial was impossible. He maintains both that the publicity entitled him to a change of venue without a showing of identifiable prejudice and also that he met the burden of proving that actual prejudice existed. *See State v. Mulligan*, 126 Ariz. 210, 613 P.2d 1266 (1980).

Motions for a change of venue are made pursuant to Rule 10.3(b), Ariz.R.Crim.P., 17 A.R.S., which provides:

Whenever the grounds for change of place of trial are based on pretrial publicity, the moving party shall be required to prove that the dissemination of the prejudicial material will probably result in the party being deprived of a fair trial.

We have held that the standard established by Rule 10.3 is commensurate with the constitutional standard, *State v. Smith*, 123 Ariz. 231, 236, 599 P.2d 187, 192 (1979), namely whether the individual juror "can lay aside his impression or opinion and render a verdict based on the evidence presented in court," *Irvin v. Dowd*, 366 U.S. 717, 723, 81 S.Ct. 1639, 1649, 6 L.Ed.2d 751 (1961).

In unusual circumstances, we have presumed that pretrial publicity renders a fair trial impossible. Either where the publicity is "outrageous," *Mulligan*,

126 Ariz. at 214, 613 P.2d at 1270, or where it pervades the court proceedings to the extent they take on a "carnival atmosphere," *State v. Chaney*, 141 Ariz. 295, 302, 686 P.2d 1265, 1272 (1984), prejudice is presumed. In all other cases, defendant has the burden of proving that the pretrial publicity will likely deprive him of a fair trial. *Id.* He can satisfy this burden by showing that the jurors have formed preconceived notions concerning his guilt and that they cannot lay those notions aside. *Mulligan*, 126 Ariz. at 214, 613 P.2d at 1270. Prior knowledge of a case, by itself, is therefore insufficient to disqualify a juror. *Smith*, 123 Ariz. at 236, 599 P.2d at 192.

In the instant case, the trial court denied defendant's motion for a change of venue, finding that "the media ... acted with competency and professionalism in their newscasts and written coverage. The reporting was non-hysterical in tone ... and was concerned primarily with providing the public with as much information as possible" about an escaped felon. Minute Entry, Mar. 17, 1986. It concluded that the publicity could not be presumed to have rendered a fair trial impossible. We agree.

The newspaper articles defendant submitted in support of his motion factually represented his escape, recapture, and the larger problem of courthouse security. *See Smith*, 123 Ariz. at 236, 599 P.2d at 192. The most recent article was dated January 22, 1986, seven months before the trial. Most had appeared within days of the escape on November 19, 1985.[1] We see nothing in the coverage to support defendant's characterization of it as outrageous. The events described may well have been outrageous, but this is attributable to the nature of defendant's acts, not to the manner of coverage. We therefore reject de-

1. During individual voir dire, several prospective jurors referred to more recent media coverage of defendant's conduct at pretrial proceedings. This subsequent publicity was not the subject of defendant's original motions for change of venue or change of trial site or of his petition for review to this court. Although it was the subject of a renewed motion for a change of trial site, made orally to the trial court on September 2, 1986, we believe that motion, too, was properly denied. Each time the publicity was mentioned by a prospective juror, the court duly inquired about the juror's ability to set it aside and try the case solely on the evidence presented in court.

fendant's assertion that the publicity was per se prejudicial.

In addition, we find that the court took adequate measures to ensure that prospective jurors' exposure to the publicity did not in fact deprive defendant of a fair trial. Contrary to defendant's assertion, "[i]t is the *effect* of publicity on a juror's objectivity that is critical, not the extent of publicity." *State v. LaGrand*, 153 Ariz. 21, 34, 734 P.2d 563, 576 (emphasis in original), *cert. denied,* —— U.S. ——, 108 S.Ct. 207, 98 L.Ed.2d 158 (1987). The trial court conducted individual voir dire to assess the extent of the prospective jurors' knowledge of the case and their ability to set aside any preconceived notions they had formed. *See id.* (approving this procedure). Of those prospective jurors who had been exposed to the pretrial publicity, many had only vague recollections of its substance. Most told the court they could set aside any opinions they had formed and decide the case solely on the evidence presented in court. Only five jurors said they could not fairly judge the case because of the publicity, and they were excused. Absent an abuse of discretion, the trial court's denial of a motion for a change of venue will not be disturbed. *Chaney,* 141 Ariz. at 302, 686 P.2d at 1272. We accordingly reject defendant's assignment of error on this issue.

B. Did the Trial Court Err in Granting the State's Motion to Consolidate the Escape and Post–Escape Charges?

 Defendant next asserts that consolidation of the charges against him was improper under Rule 13.3, Ariz.R.Crim.P., 17 A.R.S. He maintains that the crime of escape was complete when he escaped from custody and that the two subsequent groups of crimes were unrelated to the escape or to each other.

Rule 13.3 governs the joinder and consolidation of criminal offenses. Subsection (a) provides that offenses can be joined if they

(1) Are of the same or similar character; or

(2) Are based on the same conduct or are otherwise connected together in their commission; or

(3) Are alleged to have been a part of a common scheme or plan.

Provided the offenses fit into one or more of these categories, subsection (c) permits consolidation "in whole or in part by the court or upon motion of either party, provided that the ends of justice will not be defeated thereby."

In *State v. Via,* 146 Ariz. 108, 115, 704 P.2d 238, 245 (1985), *cert. denied,* 475 U.S. 1048, 106 S.Ct. 1268, 89 L.Ed.2d 577 (1986), we held that consolidation is proper where the evidence relating to one set of charges would be admissible on another set "as part of the complete picture." More specifically, we have let stand a lower court ruling approving consolidation where the earlier offense was used to show the motive for the later. *State v. Guillen,* 151 Ariz. 115, 118, 726 P.2d 212, 215 (App.1986) (consolidation of molestation and child abuse charges proper to show why beatings were being administered), *rev. denied* (1986). We have also approved consolidation where the earlier offense was used to show the means by which the later offense was committed. *State v. Martinez–Villareal,* 145 Ariz. 441, 445–46, 702 P.2d 670, 674–75 (consolidation of burglary and murder counts proper where murder weapon was obtained in the burglary), *cert. denied,* 474 U.S. 975, 106 S.Ct. 339, 88 L.Ed.2d 324 (1985).

In this case, evidence of defendant's escape from the courthouse was relevant to his motive for committing the crimes against both Ramirez and Brown. Defendant was apparently in search of three things to remove himself as far as possible from the scene of the first crimes: he needed a vehicle, a weapon, and money. He sought all three from both victims and succeeded in obtaining a rifle from Ramirez, a car and cash from Brown. In addition, evidence of the rifle stolen from Ramirez was relevant to show how the crimes against Brown took place. Defendant was pointing Ramirez's rifle at Brown when he entered the convenience store where she worked. He used the weapon as an actual or implied threat as he forced her to empty the cash register and then accompany him out of Tucson.

The decision to grant a motion to consolidate is within the sound discretion of the trial court. *State v. Kinkade,* 140 Ariz. 91, 93, 680 P.2d 801, 803 (1984). We find no abuse of that discretion and therefore reject defendant's second assignment of error.

### C. Was Defendant Denied Effective Assistance of Counsel?

 Defendant maintains that his attorney's failure to file a motion to sever until the date of trial constituted ineffective assistance of counsel. He asserts that there was a reasonable probability the motion would have been granted had it been timely filed.

To establish ineffectiveness of counsel a defendant must show both that counsel's performance was deficient and that counsel's deficient performance prejudiced the defense. *State v. Nash,* 143 Ariz. 392, 397, 694 P.2d 222, 227, *cert. denied,* 471 U.S. 1143, 105 S.Ct. 2689, 86 L.Ed.2d 706 (1985). Rule 13.4, Ariz.R.Crim.P., 17 A.R.S., requires that a defendant's motion to sever offenses must be made at least twenty days prior to trial. In this case, as defendant correctly notes, the motion was not filed until August 29, 1986, the first day of trial.

Whether or not the untimeliness constitutes deficient performance under the circumstances of this case, we believe that it did not prejudice the defense. In May 1986 defense counsel had timely filed an opposition to the state's motion to consolidate the charges against defendant. That opposition set forth the very arguments that were reiterated in the subsequent motion to sever. The arguments were implicitly rejected by the court's granting of the motion to consolidate. When the motion to sever was filed, moreover, the trial court apparently considered it on its merits despite its untimeliness:

> MR. COUSER [defense counsel]: I'm aware of the previous consolidation. I just feel that trying these three separate CR numbers together would be prejudicial for the reasons stated in the motion.
>
> THE COURT: Okay. I considered that last time, and I think that it's so

entwined, the cases are so entwined with one another that consolidation was proper.

> So show the motion to sever offenses is denied.

RT, Aug. 29, 1986, at 165-66.

Because defendant has failed to show prejudice by counsel's alleged deficiency, we find his claim of ineffective assistance meritless.

### III. CONCLUSION

We have searched the record for fundamental error, pursuant to A.R.S. § 13–4035 and *Anders v. California,* 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967). Having found none, we affirm the convictions of the trial court.

GORDON, C.J., and CAMERON, HOLOHAN and MOELLER, JJ., concur.