NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

JERRY MARVETTE BRICE, *Appellant.*

No. 1 CA-CR 23-0348

FILED 10-22-2024

Appeal from the Superior Court in Maricopa County
No. CR2020-002330-001
The Honorable Kevin B. Wein, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Alice M. Jones
*Counsel for Appellee*

Bain & Lauritano, PLC, Glendale
By Amy E. Bain
*Counsel for Appellant*

---

**MEMORANDUM DECISION**

Presiding Judge Jennifer B. Campbell delivered the decision of the Court, in which Judge Kent E. Cattani and Judge Paul J. McMurdie joined.

---

**C A M P B E L L**, Judge:

¶1        Jerry Marvette Brice appeals his felony convictions and sentences arising from a nightclub shooting and his later attempts to target witnesses using the jail telephone. Brice argues that the charges from the two events were improperly consolidated for trial, some convictions were unsupported by sufficient evidence, and the sentencing ranges for two convictions were improperly enhanced. For the reasons below, we affirm the convictions and sentences.

**BACKGROUND**

**I.        Nightclub Shooting**

¶2        One evening in October 2017, Brice and Donald Ray drove a Dodge Magnum to a nightclub in Avondale. The car was on loan from Owen Mitchell, who had himself been loaned the car by a girlfriend. Brice and Ray went into the nightclub and socialized.

¶3        When the club closed in the early morning hours, patron Victor Rice went out to the parking lot, where a man ran up behind him and shot him with a handgun. There were at least three initial shots. Rice's cousin, Ralph Clark, returned fire as the shooter ran away and climbed into the passenger side of a Dodge Magnum.

¶4        Rice collapsed and soon died. A forensic examination showed that the cause of death was gunshot wounds to his head and back. Bystander Jacqueline Benson also sustained a gunshot wound to her leg. Forensic tests showed that both Rice and Benson were shot by one of two handguns the police found on the ground in the parking lot after the incident. Shell casings found at the scene appeared to have been fired from the same handgun.

¶5        Later, police located the Dodge Magnum that Mitchell had loaned Brice and Ray. It had bullet holes in the hood, and the windshield had been replaced. Inside the car was a cigarette package bearing Brice's

fingerprint. At the time of the shooting, Brice was a high-ranking member of the West Side City Crips, a criminal street gang, and Ray and Mitchell were also linked to the gang.

¶6 Ray participated in a "free talk" interview with police in February 2018. He explained that he drove Brice away from the scene in the loaned Dodge Magnum, which had a new bullet hole through the windshield, and then left the car with Brice. Mitchell participated in a "free talk" a year later. Mitchell told detectives that he missed multiple phone calls from Ray's phone number just after the shooting. When Mitchell finally called back, Brice answered the phone and told Mitchell to get the car. Brice told Mitchell that the car had bullet holes in it because a girl in the club had "said something to him . . . about the kid" and then "some shit went down[,] and he ended up shooting the kid" in the head. Brice also told Mitchell that he had thrown "the guns" out as he and Ray left. Brice told Mitchell he was looking for Ray because he wanted "to get their story right."

¶7 When witnesses Karly Flick and Candice Drake were shown photo lineups that included Brice, Flick selected a photo other than Brice's, and Drake selected no photo—but Drake began visibly shaking when she held Brice's photo. Clark was also unable to identify the shooter in a photo lineup, but he suggested that he might pick Brice's photo if the image were of better quality. Clark told police that he recognized the shooter as "Shaka"—Brice's nickname—and he showed police a social-media photo of Brice. At trial, he testified that he was certain Brice was the shooter.

## II. Witness-Targeting

¶8 After the shooting, Brice was incarcerated in the Fourth Avenue Jail. While there, Brice made many phone calls speaking to or about other known members of the West Side City Crips. He initiated some of the calls—all of which were recorded with his knowledge—using other inmates' booking numbers, knowingly violating jail rules.

¶9 Brice spoke often with his children's mother, Talia Adams, and had her organize three-way calls with gang members, pass her phone to members, and relay messages to members. Using their nicknames, Brice identified Ray and Mitchell as snitches in multiple calls. He also mentioned a "bitch named [Natalie]"—the name of one of the witnesses to the shooting. He wrote "Natalie" on the envelope of a letter he sent to Adams and then, during a call, directed her to look at that name. He told a male on the call that Adams would be giving him a name.

3

¶10 In a call initiated under a different inmate's booking number, Brice told Adams to tell gang member Frank Sims to not "fuck with"—i.e., not conduct gang business with—either Ray or Mitchell and to "hammer"—i.e., take action. Adams retrieved a police report referencing Ray's "free talk," and Brice told Sims directly that he knew about Ray's cooperation with the police and had "work"—i.e., police reports—on Ray. Brice also told Sims that he already knew what he wanted him to do.

¶11 In another call, again made under a different inmate's booking number, Brice mentioned Ray's nickname and stated that he wanted "that movie"—i.e., a "free talk"—to be "stomp[ed]." Some months later, West Side City Crips member Mark Bench called Brice's cousin, told her he was in the same jail pod as Ray, and asked for an "official whistle." She understood Bench to be asking Brice's permission to take action against Ray. She conveyed that information to Brice the next day. Brice responded that Bench already knew what to do, "he can have the bitch," "holler at that bitch and treat that bitch how he's supposed to be treated," "just beat the bitch ass," and "smash that bitch and kick that bitch to the curb."

¶12 Soon after, Bench attacked and beat Ray in the jail pod. Later, when describing the attack to another, Bench stated that Brice had "blessed [him] with the LT status"—i.e., a promotion within the gang.

### III. Charges and Consolidation for Trial

¶13 For the nightclub shooting, Brice was indicted for second-degree murder and aggravated assault (shooting charges).[1] For the jail communications, he was indicted for two counts of participating in a criminal street gang, and one count each of fraudulent schemes and artifices, influencing a witness, and obstructing criminal investigations or prosecutions (witness-targeting charges). A co-defendant was also indicted on some of the witness-targeting charges.

¶14 Brice moved to sever his case from his co-defendant's and to sever the shooting charges from the witness-targeting charges. The court denied Brice's motion and oral request for reconsideration. Brice then filed a written motion for reconsideration, which the court denied as moot just before voir dire because the co-defendant pled guilty. Brice never renewed his charge-severance request. The case against Brice proceeded to a 17-day trial.

---

[1] Brice was also indicted for misconduct involving weapons, but that charge was severed before trial and is not the subject of this appeal.

**¶15**        Evidence presented at trial showed that Brice was a ranking member of the West Side City Crips at the time of the shooting and, by the time of his incarceration, was a General in the gang. A gang-enforcement detective testified that eliminating snitches is a primary focus of the West Side City Crips and that the gang is a hierarchically organized group in which members may raise their status by "putting in work for the gang." The detective explained that though gang Generals may act in their self-interest, "you have to understand as well that what helps or protects the [G]eneral also protects the gang. It is helpful to both. So you could see it as self-serving, but that could also, again, keep leadership strong and in place and active . . . ."

**¶16**        The court denied Brice's motion for a directed verdict under Arizona Rule of Criminal Procedure (Rule) 20. At the end of the trial, the jury found Brice guilty on all charges and found both sentence aggravators and enhancers. As relevant to this appeal, for the convictions for participating in a criminal street gang, the jury found that the offenses were committed "with the intent to promote, further or assist any criminal conduct by a criminal street gang." *See* A.R.S. § 13-714. The court found that Brice had prior convictions. The court entered judgment on the jury's verdicts and sentenced Brice to prison, with concurrent life terms for the murder and aggravated assault to be followed by concurrent-to-each-other terms totaling 20.75 years for the remaining offenses. Brice appealed.

## DISCUSSION

**¶17**        Brice argues that the trial court erred by consolidating the charges, that insufficient evidence supported some of his convictions, and that he received double punishment for the gang offenses. We address each of Brice's arguments in turn.

### I.        Joinder of Charges

**¶18**        Brice contends that the trial court should have severed the shooting charges from the witness-targeting charges. We find no error in the court's joinder of the two groups of offenses.

**¶19**        Joinder and severance of criminal charges is governed by Rules 13.3 and 13.4, which must be read together. *State v. Kinkade*, 140 Ariz. 91, 93 (1984). "Generally, 'in the interest of judicial economy, joint trials are the rule rather than the exception.'" *State v. Allen*, 253 Ariz. 306, 309, ¶ 56 (2022). The trial court has broad discretion to determine whether severance is required and abuses that discretion only when a defendant shows, at the time of his motion, that a consolidated trial would prejudice him. *Id.* at ¶ 55.

Such prejudice must be compelling and unable to be protected against. *State v. Goudeau*, 239 Ariz. 421, 446, ¶ 67 (2016). Protection may be provided by proper jury instructions, which we presume the jury follows. *See id.*

**¶20** As relevant here, Rule 13.3(a)(2) provides that charges may be joined if they "are based on the same conduct *or are otherwise connected together in their commission*." (Emphasis added.) The phrase "otherwise connected together in their commission" must be interpreted narrowly—it is not merely "a catch-all for cases in which some logical connection exists between unrelated crimes." *State v. Prion*, 203 Ariz. 157, 163, ¶ 35 (2002). Crimes are "otherwise connected together in their commission" only if "evidence of the [different] crimes [is] so intertwined and related that much the same evidence [is] relevant to and would prove both, and the crimes themselves arose out of a series of connected acts." *Id.* at 162, ¶ 32. This may be the case when a defendant tries to silence a witness to his earlier criminal conduct. *See State v. Williams*, 183 Ariz. 368, 375–77 (1995) (upholding consolidation of murder charge with charges of armed robbery and attempted murder of witness whom defendant believed had implicated him in the murder). In those cases, the evidence of the earlier conduct may be admissible to show motive for the later conduct, and the evidence of the later conduct may be admissible to show identity for the earlier conduct. *See id.*; *State v. Befford*, 157 Ariz. 37, 40 (1988). In other words, when cross-admissibility exists, consolidation is proper. *See Befford*, 157 Ariz. at 40; *see also State v. Bravo*, 131 Ariz. 168, 169 (App. 1981).

**¶21** When charges are joined under Rule 13.3(a)(2), the defendant is entitled to severance only "if necessary to promote a fair determination of [his] guilt or innocence of any offense." Rule 13.4(a). But to exercise the right to severance, the defendant must make a timely motion before trial. Rule 13.4(c). If that motion is denied, a defendant must renew it "during trial before or at the close of evidence." *Id.* "The right to severance is waived if the defendant fails to timely file and renew a proper motion for severance." *Id.*

**¶22** The renewal requirement, which helps prevent defendants from "playing 'fast and loose' with the trial court" and allows the court to reassess the evidence as it develops, is strictly applied. *State v. Flythe*, 219 Ariz. 117, 119–20, ¶¶ 5, 10 (App. 2008) (citation omitted). When a defendant fails to renew a motion to sever timely, we review the denial of severance for fundamental error. *Goudeau*, 239 Ariz. at 443, ¶ 54. Fundamental error is error that goes to the foundation of the case, takes away an essential defense right, and deprives the defendant of a fair trial. *State v. Henderson*, 210 Ariz.

561, 567, ¶ 19 (2005). To prevail on fundamental error review, the defendant must also show prejudice. *Id.* at ¶ 20.

¶23 Brice failed to renew his request to sever the charges during the trial. He therefore waived his right to severance, and we only review the denial of severance for fundamental error. *See* Rule 13.4(c); *Goudeau*, 239 Ariz. at 443, ¶ 54. We hold that Brice has shown neither fundamental error nor prejudice.

¶24 The later charges all stemmed from Brice's efforts to identify and target witnesses to the events underlying the shooting charges. The conduct underlying the shooting charges was relevant to show Brice's motive for the witness-targeting offenses, and the conduct underlying the witness-targeting offenses was relevant to show Brice's responsibility for the shooting offenses. *See Williams*, 183 Ariz. at 375–77. And under the evidentiary rules, the evidence related to both sets of offenses would have been cross-admissible in separate trials. *See* Ariz. R. Evid. 404(b) (providing that "evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith," but such evidence "may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident"). The trial court did not err, much less fundamentally err, by denying Brice's severance motion.

¶25 Brice likewise failed to show prejudice. Though he complains that the consolidated trial "tarnish[ed] [him] with the stigma associated with criminal street gangs and unfairly prejudic[ed] [the] jury," the evidence supporting each conviction was substantial. Additionally, any potential prejudice was alleviated by jury instructions requiring the State to prove "each element of each charge beyond a reasonable doubt" and the jury to decide each charge "separately on the evidence with the law applicable to it, uninfluenced by your decision on any other count." *See Goudeau*, 239 Ariz. at 446, ¶ 67. Brice is not entitled to relief based on the trial court's refusal to sever the charges.

## II. Sufficiency of the Evidence

¶26 Brice challenges the denial of his Rule 20 motion concerning the charges of murder, aggravated assault, fraudulent schemes and artifices, and participating in a criminal street gang. Again, we find no error.

¶27 Under Rule 20, the court must enter a judgment of acquittal if no "substantial evidence" supports guilt. "Substantial evidence" is evidence that reasonable persons could accept as sufficient to show guilt

beyond a reasonable doubt. *State v. West*, 226 Ariz. 559, 562, ¶ 16 (2011). We review the sufficiency of the evidence de novo, taking the evidence in the light most favorable to the prosecution and determining whether any rational trier of fact could have found the crime's essential elements proved beyond a reasonable doubt. *Id.* at ¶¶ 15–16. We do not reweigh the evidence and make no distinction between direct and circumstantial evidence. *State v. Nash*, 143 Ariz. 392, 404 (1985). Nor do we reassess witness credibility — that is a matter for the jury. *State v. Hall*, 204 Ariz. 442, 455, ¶ 55 (2003).

**¶28**        "[I]t is unnecessary for the prosecution to negate every conceivable hypothesis of innocence when guilt has been established by circumstantial evidence." *Nash*, 143 Ariz. at 404. Further, "physical evidence is not required to sustain a conviction if the totality of the circumstances demonstrates guilt beyond a reasonable doubt." *Hall*, 204 Ariz. at 454, ¶ 49.

## A. Murder

**¶29**        Brice argues that insufficient evidence showed that he was the person who shot and killed Rice. "A person commits second degree murder if without premeditation . . . [he] intentionally causes the death of another person." A.R.S. § 13-1104(A)(1). Brice stresses that no witness identified him as the shooter in photo lineups, and some described the shooter as having a hairstyle different from his own. He also emphasizes that though Clark identified him as the shooter at trial, he first lied to police about returning fire and described a close-range shot inconsistent with the forensic evidence. Brice finally stresses the lack of evidence that he owned either of the guns found at the scene and the absence of DNA, fingerprint, and video evidence.

**¶30**        But Brice ignores evidence that confirmed he was the shooter. Mitchell testified that after the shooting, Brice admitted culpability for Rice's death, said he had thrown the guns out as he and Ray left, and said he was looking for Ray because he wanted the pair to get their story straight. Evidence showed that Brice left the scene with Ray in a car that sustained bullet strikes and that two guns — including the gun used to kill Rice — were discarded on the ground of the parking lot. Though no witness identified Brice in photo lineups, Clark told police that he might have picked Brice's photo if it were of better quality. Witness Drake began shaking when she saw Brice's image. Clark also identified Brice by nickname to police and positively identified Brice as the shooter at trial.

¶31        It was for the jury to weigh the evidence and resolve witness credibility. *See Nash*, 143 Ariz. at 404; *Hall*, 204 Ariz. at 455, ¶ 55. Again, the State was not required to negate every possible defense theory, and the absence of physical evidence was not determinative. *See Nash*, 143 Ariz. at 404; *Hall*, 204 Ariz. at 454, ¶ 49. The State produced substantial evidence permitting the jury to find that Brice intentionally shot and killed Rice.

## B.  Aggravated Assault

¶32        Brice argues that insufficient evidence showed that he was the person who shot and injured bystander Benson. A person commits aggravated assault if he "[i]ntentionally, knowingly or recklessly caus[es] any physical injury to another person" using "a deadly weapon." A.R.S. §§ 13-1203(A)(1), -1204(A)(2). A gun is a deadly weapon. A.R.S. § 13-105(15).

¶33        Brice highlights the fact that Clark also fired shots and no physical evidence tied Brice to the gun used to shoot Benson. Brice ignores the evidence that multiple shots preceded Clark's returning fire. He also ignores that police recovered a gun on the ground in the parking lot that apparently fired the projectiles found in both Rice and Benson. He also ignores telling Mitchell he threw out guns while leaving the scene. Again, it was for the jury to weigh the evidence and resolve witness credibility, the State was not required to negate every possible defense theory, and the conflicting physical evidence was not determinative. *See Nash*, 143 Ariz. at 404; *Hall*, 204 Ariz. at 454–55, ¶¶ 49, 55. The State produced substantial evidence permitting the jury to find that Brice injured Benson by shooting her, and did so at least recklessly.

## C.  Fraudulent Schemes and Artifices

¶34        A person commits fraudulent schemes and artifices if he, "pursuant to a scheme or artifice to defraud, knowingly obtains any benefit by means of false or fraudulent pretenses, representations, promises or material omissions." A.R.S. § 13-2310(A). This offense encompasses a broad range of fraudulent activities. *State v. Haas*, 138 Ariz. 413, 424 (1983). It includes plans, devices, or tricks to perpetrate fraud using representations, omissions, or half-truths to obtain any benefit. *Id.* at 423. "Benefit" is broadly defined to mean "anything of value or advantage, present or prospective." A.R.S. § 13-105(3).

¶35        Brice argues that insufficient evidence showed that he benefited from using other inmates' booking numbers to place phone calls from jail because his conduct did not stop Ray and Mitchell from

cooperating with the State. The jury could reasonably find, however, that Brice's conduct in arranging the witness-targeting intimidated the witnesses to give incomplete information—for example, Ray denied seeing Brice with a gun despite evidence that Brice discarded guns while leaving the nightclub with him. Moreover, even if the relevant phone calls had no impact on any witness' testimony, they enabled Brice to continue to exert influence from jail and thereby maintain his status in the gang. He identified Ray and Mitchell as snitches and directed an attack on Ray, demonstrating his power and serving the important gang objective of eliminating snitches. The State produced substantial evidence permitting the jury to find that Brice participated in a fraudulent scheme.

### D. Participating in a Criminal Street Gang

¶36        Brice argues that insufficient evidence showed that he acted to further the West Side City Crips' criminal objectives. A person commits participating in a criminal street gang if he "[i]ntentionally organiz[es], manag[es], direct[s], supervis[es] or financ[es] a criminal street gang with the intent to promote or further the criminal objectives of the criminal street gang," or if he "[k]nowingly incit[es] or induc[es] others to engage in violence or intimidation to promote or further the criminal objectives of a criminal street gang." A.R.S. § 13-2321(A)(1), (2). Brice was convicted under both definitions.

¶37        Brice contends that any attempts to silence witnesses were for his self-interest only. Brice ignores evidence that he was a General in the gang and that "what helps or protects the [G]eneral also protects the gang" by "keep[ing] leadership strong and in place and active." The evidence that he directed other gang members' activities from jail and authorized an attack on a snitch was enough to permit the jury to find that he was acting to further the gang's criminal objectives. The superior court did not err by denying Brice's Rule 20 motion.

### III. Double Punishment

¶38        We finally address Brice's argument that he received double punishment for the gang offenses because his sentences were enhanced based on an element of each offense. Both charges of participating in a criminal street gang, class two felonies, required that Brice acted "to promote or further the criminal objectives of a criminal street gang." A.R.S. § 13-2321(A)(1), (2), (C). The sentence enhancer the jury found, which increased the sentencing ranges by five years, similarly required that Brice "committ[ed] any felony offense with the intent to promote, further or assist

any criminal conduct by a criminal street gang." A.R.S. § 13-714. Brice argues that the application of the enhancer violated the double-jeopardy clauses of the federal and state constitutions by subjecting him to multiple punishments for the same offenses. *See* U.S. Const. amend. V; Ariz. Const. art. 2, § 10.

**¶39** We reject Brice's argument. It is well-established that a sentence enhancer does not offend double jeopardy. *State v. Harm*, 236 Ariz. 402, 408, ¶ 23 (App. 2015). The legislature's decision to enhance the sentence for an offense based on an element of it "does not mean a defendant is being punished time and time again for a single act. It merely defines a single harsh punishment for a single severe crime." *State v. Bly*, 127 Ariz. 370, 373 (1980); *see also State v. Lara*, 171 Ariz. 282, 285 (1992) ("reaffirming the rule of *Bly*"). The legislature's use of multiple statutes to determine a single punishment does not equate to violating a defendant's constitutional rights. *See Bly*, 127 Ariz. at 373. The application of the gang enhancer to the gang offenses was not error.[2]

## CONCLUSION

**¶40** For the reasons set forth above, we affirm Brice's convictions and sentences.



AMY M. WOOD • Clerk of the Court
FILED: AGFV

---

[2] Because a sentence enhancer does not implicate double jeopardy, we need not parse whether the enhancer and the offenses have identical elements, as required in a double-jeopardy analysis. *See Harm*, 236 Ariz. at 406–07, ¶ 16.