IN THE COURT OF APPEALS
STATE OF ARIZONA
DIVISION TWO



| | | |
|---|---|---|
| JAMES A. GREEN, | ) | 2 CA-CV 2008-0028 |
| | ) | DEPARTMENT A |
| Cross-Claimant/ | ) | |
| Counterdefendant/Appellant, | ) | O P I N I O N |
| | ) | |
| v. | ) | |
| | ) | |
| LISA FRANK, INC., an Arizona | ) | |
| corporation, | ) | |
| | ) | |
| Cross-Defendant/ | ) | |
| Counterclaimant/Appellee. | ) | |
| | ) | |

APPEAL FROM THE SUPERIOR COURT OF PIMA COUNTY

Cause No. C-20055273

Honorable Deborah Bernini, Judge

AFFIRMED IN PART; VACATED IN PART

Lewis and Roca LLP
  By John N. Iurino, Sivan R. Korn, and                 Tucson
  Kimberly A. Demarchi            Attorneys for Cross-Claimant/
                            Counterdefendant/Appellant

McNamara, Goldsmith, Jackson & Macdonald, P.C.
  By G. Todd Jackson                        Tucson

   and

Law Offices of Mark Wiemelt, PC
  By Robert L. Knechtel                  Chicago, Illinois
                         Attorneys for Cross-Defendant/
                            Counterclaimant/Appellee

BRAMMER, Judge.

¶1        Appellant James Green appeals from the trial court's sanctions order striking his reply to the counterclaim filed against him by appellee Lisa Frank, Inc. (LFI), entering default in favor of LFI, and dismissing with prejudice his cross-claim against LFI.  Green argues the trial court could not properly dismiss his cross-claim and reply because his violations of court orders did not prejudice LFI.  He additionally contends the trial court erred by entering default judgment on several of LFI's claims.  We affirm in part and vacate in part.

**Factual and Procedural Background**

¶2        This appeal arises from protracted litigation concerning the control and management of LFI by Green and Lisa Frank Green (Lisa Frank), who served as directors of LFI.  Lisa Frank initiated the action in September 2005 by filing a lawsuit against Green and LFI.  As later amended, Lisa Frank's complaint sought, inter alia, to remove Green as director, president, and chief operating officer of LFI; to enforce a stock buy-sell agreement among herself, Green, and LFI; and to assert a claim against Green for breach of fiduciary duties.[1]  Green filed a counterclaim against Lisa Frank and a cross-claim against LFI, seeking a declaration that the buy-sell agreement was unenforceable, asserting Lisa Frank had violated her fiduciary duties to him and to LFI, and making additional claims related to an

_____

[1]Lisa Frank later dismissed her claims against LFI.

2

airplane purchased by LFI.  LFI counterclaimed against Green, seeking an accounting and alleging he had "expended and diverted corporate funds for personal expenditures, removed corporate property from LFI's offices and facilities," and used corporate property for personal reasons.  LFI also sought damages from Green for breach of fiduciary duty, conversion, computer fraud under 18 U.S.C. § 1030, and copyright violations.  LFI additionally requested that Green be removed as a director of LFI and that the buy-sell agreement be enforced.

¶3        In October 2005, the trial court entered a stipulated order, the provisions of which included temporarily enjoining Green from "removing any intellectual property or other assets from" LFI.  In April 2006, LFI filed a motion asking the court to find Green in contempt of that order and impose sanctions.  LFI asserted that, on at least two occasions immediately following the entry of the October 2005 order, Green had used a moving van to remove property from LFI's premises, including computers containing proprietary LFI data and artwork, and "items from a locked storage area for original company artwork and advertising."  LFI also asserted that, prior to the October order, Green had directed LFI employees to create copies of LFI computer art files on compact discs.

¶4        After a hearing on LFI's motion in May 2006, the court on May 23 ordered Green to return within three days specified property, including several computers and storage media; ordered him not to "alter, delete, remove, or transfer any information" from the computers or other storage media; and ordered that the parties' information technology

3

experts would then "segregate and permanently remove" any of Green's personal files from the returned computers. The court warned Green that failure to comply with the order could result in "severe consequences, up to and including incarceration."

¶5 Although Green returned several computers in compliance with the order, he did not return one computer containing LFI data until five days after the deadline. In a previous motion to modify the order, Green had informed the court he was unable to return that computer on time because he was unable to "insure that he c[ould] access [personal] photographs [stored on that computer] on a new computer." In June 2006, attached to another motion to modify the May 23 order, Green filed a signed but undated declaration listing items he had returned to the court. In it Green stated that he was not "in possession or control of any storage media, including, but without limitation . . . [compact discs]."

¶6 LFI filed another motion for sanctions in August 2006, asserting Green had continued to violate the May order by failing to return a laptop computer and giving a "pretext" reason for the late return. LFI renewed its motion in July 2007, alleging forensic analysis of the returned computers had revealed that, after the court had entered its May 2006 order, Green had copied LFI files from those computers in violation of the order.

¶7 After a three-day hearing on LFI's motion for sanctions in November, the court in December 2007 issued a ruling containing its findings of fact and conclusions of law. The court found the evidence presented established that Green had removed computers containing proprietary LFI data in violation of the October 2005 order. It further found that, the day

4

after the court had entered its May 2006 order requiring Green to return those items and prohibiting him from copying any data, ten compact discs of material had been copied from one of the LFI computers in Green's possession—the same computer Green had not returned until five days after the deadline to do so. In addition, the court found twenty-two files on that computer had been "transferred to an attached printer," over forty LFI graphics files had been transferred from that computer to one owned by Green, and nine additional LFI files had been "accessed in a manner consistent with an email attachment." The court also noted that Green had not returned the ten compact discs.

¶8 The court found that "Green, and not counsel, [wa]s personally culpable for wilful and repeated violations of the Court's Orders . . . including, but not limited to the removal and retention of hardware, software, computer programs, intellectual and proprietary LFI property, artwork and graphics in deliberate violation of the Court's Orders." Commenting that it had "considered an array of sanctions, including the imposition of attorney fees and even incarceration," the court concluded such sanctions "have failed to impress Mr. Green in the past and do not address the damage to the intellectual property of [LFI] that has occurred and continues to occur as a result of Green's contempt for the judicial process, court orders and this Court."

¶9 The trial court entered a sanctions order dismissing Green's cross-claim against LFI, striking his reply to LFI's counterclaim against him, and granting LFI judgment "except

5

for the finding of fraud in paragraph 39 of the Fifth Claim for Relief."[2]  The court also ordered that a writ of replevin issue to deliver "**all** computers and digital storage media in Green's possession or control to the custody of the Court for forensic review and removal of LFI data, artwork, or documents."  Additionally, the court terminated Green's status as a director of LFI and awarded LFI its reasonable costs, attorney fees, "and all expert witness costs, expenses and fees incurred in connection with this and prior efforts to secure enforcement of the Court's Orders," as well as attorney fees and costs "as the prevailing party on its Counterclaim."  The court then signed and entered a judgment in favor of LFI.  The judgment incorporated the sanctions order and declared the buy-sell agreement valid and enforceable but stated that "LFI's monetary recovery pursuant to its accounting and damage claims shall be determined by subsequent proceedings."  This appeal followed.

**Jurisdiction**

¶10        We first address the fundamental issue of our jurisdiction, as we must.  *See Osuna v. Wal-Mart Stores, Inc.*, 214 Ariz. 286, n.2, 151 P.3d 1267, 1270 n.2 (App. 2007). Green argues we have jurisdiction to address his appeal, while LFI argues we do not. Relying on A.R.S. § 12-864, LFI reasons we lack jurisdiction because the trial court's order

---

[2]The court's ruling stated that it had struck Green's reply to LFI's "March 24, 2006" counterclaim.  But that reply had been superseded by Green's reply to LFI's amended counterclaim.  Thus, striking the first reply would have had no effect.  Because the court's clear intent was to dispose of the claims between LFI and Green, we interpret this ruling as striking Green's more recently filed reply and entering judgment in favor of LFI on its amended counterclaim.

6

sanctioning Green is an order of contempt, based on LFI's request that Green be held in contempt for disobeying the court's orders. LFI relies on *State v. Mulligan*, 126 Ariz. 210, 216, 613 P.2d 1266, 1272 (1980), in which the defendant, besides appealing his criminal conviction, also sought to appeal several criminal contempt citations. Our supreme court stated: "We find no authorization of such an appeal from the contempt charges, either by statute or rules of this court. Findings of contempt are non-appealable orders." *Id.* The court concluded its finding of nonappealability with the observation that Mulligan's "review remedy" of the contempt citations was by special action. *Id.* at 217, 613 P.2d at 1273.

¶11         In its motion for sanctions, LFI asked the trial court to sanction Green pursuant to Rules 37 and 65(j)(1), Ariz. R. Civ. P., but also argued the court "ha[d] the inherent authority to sanction those who abuse the judicial process or mishandle evidence"—presumably a request that the court find Green in civil contempt under § 12-864. The court's minute entry granting LFI's motion cited much of the same authority as LFI and ordered sanctions "[a]s a result of Green's wilful violation of the Court's previous orders pertaining to the turnover of LFI property and evidence." Although the court did not cite § 12-864 as authority for the sanctions it imposed and did not expressly find Green in contempt, as we explain below in ¶ 29 *infra*, it nonetheless appears the court sanctioned Green pursuant to § 12-864. But, whether the court's order is correctly characterized as a discovery sanction, a finding of civil contempt under § 12-864, or some hybrid of the two, is ultimately irrelevant to our jurisdiction. The question we address is whether the court's

7

sanctions order is appealable under the statute governing our appellate jurisdiction, A.R.S. § 12-2101.

¶12        In concluding we have jurisdiction to address this appeal, we begin with two principles: one found in § 12-2101 and the other contained within the rationale of the cases holding that contempt orders are not appealable. The first principle guides our appellate jurisdiction—we must entertain appeals from superior court orders that finally determine the merits of a cause or are otherwise made appealable by statute. The second principle limits our jurisdiction—we may not review lower courts' contempt orders. We do not find these principles in conflict here. Rather, we conclude we indeed have jurisdiction over, and must address on the merits, the superior court order from which Green appeals.

¶13        We first acknowledge that we may not ignore and cannot alter or overrule our supreme court. *See City of Phoenix v. Leroy's Liquors, Inc.*, 177 Ariz. 375, 378, 868 P.2d 958, 961 (App. 1993) ("[W]e are bound by decisions of the Arizona Supreme Court and have no authority to overrule, modify, or disregard them."). A review of our supreme court's decisions in this area, however, reveals clearly that none of them has held unappealable an order rendered appealable by § 12-2101, even when the order rests in whole or in part on a finding of contempt.[3] Although one could posit the trial court's order sanctioning Green is

_____

[3]Our supreme court has repeatedly ruled that contempt orders are not appealable. But, unlike the order here, none of the orders addressed in those cases wholly disposed of a counterclaim and defenses in a civil action, and none of the cases suggests such an order would not be appealable. *See State v. Mulligan*, 126 Ariz. 210, 216-17, 613 P.2d 1266, 1272-73 (1980) (dismissing appeal from criminal contempt orders sentencing defendant to jail);

8

unappealable because it is associated with, or based on, an order sanctioning contempt, we disagree.

¶14     "In Arizona, our statutes and rules of appellate procedure permit appeals only from final judgments or orders." *S. Cal. Edison Co. v. Peabody W. Coal Co.*, 194 Ariz. 47,

---

*Ex parte Wright*, 36 Ariz. 8, 16, 281 P. 944, 947 (1929) (holding nonappealable civil contempt order resulting in fines or imprisonment); *Van Dyke v. Superior Court*, 24 Ariz. 508, 543, 211 P. 576, 588 (1922) (noting "common-law rule that every court of record is the exclusive judge of contempts committed against its authority and dignity, and, as a corollary, that no appeal lies from a judgment in such proceedings, in the absence of constitutional or statutory authority conferring the right"); *Ex parte Brown*, 3 Ariz. 411, 412, 77 P. 489, 489 (Terr. 1892) (stating contempt order not appealable and remanding prisoners into sheriff's custody). We also note that, although this rule has oft been repeated by this court, none of those decisions encompasses a final judgment in a civil action based on a contempt order. *See, e.g., State ex rel. Dep't of Econ. Sec. v. Burton*, 205 Ariz. 27, ¶¶ 17-18, 66 P.3d 70, 73 (App. 2003) (no appeal from contempt order for failure to make child support payments); *Danielson v. Evans*, 201 Ariz. 401, ¶¶ 34-35, 37, 36 P.3d 749, 759 (App. 2001) (no appellate jurisdiction over contempt order related to failure to make property settlement payments in dissolution action); *Elia v. Pifer*, 194 Ariz. 74, ¶¶ 26, 30, 977 P.2d 796, 802 (App. 1998) (no appeal from contempt finding for failure to make support payments); *Pace v. Pace*, 128 Ariz. 455, 456-57, 626 P.2d 619, 620-21 (App. 1981) (same); *In re Maricopa County Juv. Action No. JT-295003*, 126 Ariz. 409, 410-11, 616 P.2d 84, 85-86 (App. 1980) (no appeal from contempt order of imprisonment and fines for actions "obstructing the administration of justice and lessening the dignity and authority of the Court" in juvenile adjudication); *Riley v. Superior Court*, 124 Ariz. 498, 498-99, 605 P.2d 900, 900-01 (App. 1979) (contempt order of imprisonment and fine against prosecutor in probation violation hearing not appealable); *Haggard v. Superior Court*, 26 Ariz. App. 162, 162-63, 547 P.2d 14, 14-15 (1976) (no appeal from contempt order fining attorney for failure to appear on behalf of client in criminal prosecution); *United Farm Workers Nat'l Union v. Heggblade-Marguleas-Tenneco, Inc.*, 21 Ariz. App. 514, 514-15, 520 P.2d 1191, 1191-92 (1974) (contempt order for violating judgment not appealable); *Van Baalen v. Superior Court*, 19 Ariz. App. 512, 512-13, 508 P.2d 771, 771-72 (1973) (civil contempt order fining attorney for failing to appear in criminal action not appealable); *In re Anonymous*, 4 Ariz. App. 170, 171, 418 P.2d 416, 417 (1966) (same); *Herzog v. Reinhardt*, 2 Ariz. App. 103, 104-05, 406 P.2d 738, 739-40 (1965) (no appeal from contempt order enforcing child custody order).

¶ 16, 977 P.2d 769, 774 (1999). "In the civil context, the right to appeal is not absolute but exists only by statute." *Id.* Whether an order is final and appealable depends not on its form but on "'its substance or effect.'" *Props. Inv. Enters., Ltd. v. Found. for Airborne Relief, Inc.*, 115 Ariz. 52, 54, 563 P.2d 307, 309 (App. 1977), *quoting Connolly v. Great Basin Ins. Co.*, 5 Ariz. App. 117, 120, 423 P.2d 732, 735 (1967). An appealable final judgment under § 12-2101(B) "'decides and disposes of the cause on its merits, leaving no question open for judicial determination.'"[4] *Id.*, *quoting Decker v. City of Tucson,* 4 Ariz. App. 270, 272, 419 P.2d 400, 402 (1966).

¶15    The judgment from which Green appeals dismissed his cross-claim against LFI with prejudice and struck his reply to LFI's counterclaim, "grant[ing] judgment in [LFI's] favor . . . except for the finding of fraud." It declared the buy-sell agreement valid and enforceable, ordered that agreement to be performed, enjoined Green from using or distributing LFI's data and artwork, terminated Green's status as a director of LFI, and ordered Green to surrender LFI computers and other materials—all as requested in LFI's counterclaim. But, because the judgment leaves open the question of damages, it is not a final judgment as contemplated by § 12-2101(B). The judgment, however, contains the trial

---

[4]The phrase "on the merits" does not mean the cause of action had to be determined after trial. A decision is "'on the merits' if it finally resolves an action in a manner that precludes later relitigation of the claims involved. Such a judgment may result from an actual trial on the substantive issues but it need not do so." *4501 Northpoint LP v. Maricopa County*, 212 Ariz. 98, ¶ 16, 128 P.3d 215, 218 (2006) (internal citations omitted). A decision on the merits includes a judgment resulting from a stipulation, a grant of summary judgment, or a dismissal with prejudice. *Id.* ¶ 17.

court's findings pursuant to Rule 54(b), Ariz. R. Civ. P., that there are "no remaining issues on the claims between Green and LFI aside from the monetary amount of LFI's recovery and that there is no just reason for delay on this judgment," and it "directs the immediate entry" of the judgment. Thus, the judgment is appealable pursuant to § 12-2101(G), which allows appeal "[f]rom an interlocutory judgment which determines the rights of the parties and it directs an accounting or other proceeding to determine the amount of the recovery." *See Bilke v. State*, 206 Ariz. 462, ¶ 28, 80 P.3d 269, 275 (2003); *Salerno v. Atl. Mut. Ins. Co.*, 198 Ariz. 54, ¶ 12, 6 P.3d 758, 761-62 (App. 2000).

¶16        In none of the cases reciting the rule that contempt orders are unappealable were the orders at issue final judgments—unlike the trial court's order here, they did not decide the merits of the underlying action, nor did they fall within the definition of an appealable interlocutory order. *See n.1 supra*; *see also* § 12-2101(C) through (L); *Van Dyke v. Superior Court*, 24 Ariz. 508, 544, 211 P. 576, 588 (1922) (contempt is not "special proceeding[]" allowing appeal under statute governing appellate jurisdiction). Accordingly, we do not find those cases dispositive of our jurisdiction here. The question whether a party may appeal a contempt order that is, in substance and effect, an appealable order under § 12-2101 has not been previously addressed in Arizona. We need not ignore or alter any prior Arizona case law to find that we have jurisdiction.

¶17        Moreover, the reason behind the rule disallowing appeals from pure contempt orders is simply inapplicable here. As Division One of this court has explained,

11

> The rationale [for the rule] is that parties have already been given the chance to appeal from the order that forms the basis for contempt. Enforcement of such orders cannot be held up by contempt appeals; where review of a contempt order is needed, it must be by the speedier route of special action petition.

*Elia v. Pifer*, 194 Ariz. 74, ¶ 30, 977 P.2d 976, 802 (App. 1998). Here, of course, there is no previous, appealable order or judgment "form[ing] the basis for contempt." *Id.* Indeed, there is no other order to enforce and nothing to be delayed by an appeal; the action between Green and LFI is over except for the determination of damages. An appeal is the only avenue available that assures review of the judgment that finally determined Green's liability to LFI and disposed of his claims against it.

¶18 Although a finding of criminal contempt is specifically appealable by statute, *see* A.R.S. § 12-863(D), there is no such provision in § 12-864, the civil contempt statute. And our supreme court has previously found civil contempt orders unappealable, noting that § 12-864 provides that they be governed by "the practice and usage of the common law." *See Ex parte Wright*, 36 Ariz. 8, 16, 281 P. 944, 947 (1929). Accordingly, one could conclude not only that the legislature has failed to provide expressly for an appeal from a civil contempt order, but also that the common law rule that contempt orders are unappealable controls.

¶19 We disagree with this proposition for three reasons. First, an appeal from a criminal contempt conviction is markedly different from a typical criminal appeal. A criminal contempt proceeding may be initiated, inter alia, "upon affidavit of some credible

12

person." A.R.S. § 12-862(A). Our criminal appeals statute, A.R.S. § 13-4031, permits appeal only from a "prosecution by indictment, information or complaint," which would appear to exclude contempt proceedings initiated by affidavit. And § 12-863(D) provides that, during an appeal from a conviction for criminal contempt, the execution of sentence is stayed. The statutes governing most criminal appeals have no equivalent provision. *See* A.R.S. §§ 13-4031 through 13-4042. Thus, it appears the legislature included specific appeal rights under § 12-863(D) because those rights are not conferred elsewhere in our statutes. The inclusion of appellate rights for criminal contempt does not necessarily suggest the failure to provide appellate rights for civil contempt in § 12-864 means the legislature intended to preclude appeal from a civil contempt order; it is reasonable to conclude the legislature intended § 12-2101 to govern appeals from such orders. Moreover, our supreme court suggested in *Mulligan*, 126 Ariz. at 216-17, 613 P.2d at 1272-73, that appeals from contempt orders were unavailable not because they were precluded by the legislature's reference in § 12-864 to the common law, but rather because they were not provided for elsewhere in our statutes or rules. *See also Van Dyke*, 24 Ariz. at 543, 211 P. at 588 (no appeal from civil contempt "*in the absence of constitutional or statutory authority conferring the right*") (emphasis added). Unlike the contempt orders at issue in *Mulligan* and *Van Dyke*, however, there is statutory authority for an appeal from the order at issue here.

¶20 Second, the reason civil contempt orders are typically unappealable is based on the common law, not on the failure of § 12-864 to provide a right to appeal. *See Wright*,

13

36 Ariz. at 13, 281 P. at 946. "[A] statutory provision authorized by the Constitution always supersedes the common law." *State ex rel. Conway v. Glenn*, 60 Ariz. 22, 30, 131 P.2d 363, 367 (1942). Thus, to the extent §§ 12-864 and 12-2101 may be in conflict on this question, we conclude the legislature's specific delineation of our appellate jurisdiction under § 12-2101 controls.

¶21 Third, we find no conflict between §§ 12-864 and 12-2101. Whenever it is reasonably practical to do so, we must interpret statutes so they are harmonious and consistent with each other. *See Yarborough v. Montoya-Paez*, 214 Ariz. 1, ¶ 22, 147 P.3d 755, 761 (App. 2006). And "[s]tatutes should be construed consistent with the common law." *United Bank v. Mesa N.O. Nelson Co.*, 121 Ariz. 438, 442, 590 P.2d 1384, 1388 (1979). The most harmonious way to read these statutes is to conclude that contempt orders are unappealable unless the substance or effect of the order in question—beyond including a "finding[] of contempt," *Mulligan*, 126 Ariz. at 216, 613 P.2d at 1272—qualifies the order as one of those made appealable pursuant to § 12-2101.

¶22 The Seventh Circuit Court of Appeals in *Szabo v. U.S. Marine Corp.*, 819 F.2d 714 (7th Cir. 1987), has reached a conclusion similar to the one we reach here. Acknowledging "[t]he general rule . . . that an order of civil contempt is not appealable," the court reasoned that "[a] blanket rule against appealing orders of civil contempt would make no sense" because a contempt order "may . . . be final." *Id.* at 716. Noting the existence of some criticism of the general rule, the court concluded:

14

The fault . . . lies in the statement of the rule rather than the practice of the courts. . . . [I]t would promote clarity to say that an order of civil contempt is appealable if and only if it is either final for purposes of [appeal under 28 U.S.C. §] 1291 or appealable under a statute allowing the appeal of interlocutory orders.[5]

*Id*.

¶23      Because we conclude we have appellate jurisdiction to review the trial court's sanctions order against Green, we need not entertain the parties' alternative invitation to treat the appeal as a request for special action relief.

**Merits Discussion**

Statute of Limitations

¶24      Green argues LFI's motion for sanctions was time-barred pursuant to A.R.S. § 12-865, which provides that "[n]o proceeding for contempt shall be instituted against any person unless begun within one year from the date of the act complained of."  Assuming, without deciding, that a motion for sanctions filed during litigation is a "proceeding" within the meaning of § 12-865, we conclude LFI's request was not barred.  LFI filed its first motion for sanctions in April 2006, approximately six months after Green had violated the

_____

[5]Section 1291, 28 U.S.C., is similar to A.R.S. § 12-2101(B), and provides that federal courts of appeals "shall have jurisdiction from all final decisions of the district courts." Certain interlocutory decisions are appealable under 28 U.S.C. § 1292.  Admittedly, however, unlike Arizona's jurisprudence, *see Bilke*, 206 Ariz. 462, ¶ 28, 80 P.3d at 275; *Salerno*, 198 Ariz. 54, ¶ 12, 6 P.3d at 761-62, federal law generally does not allow an appeal from an interlocutory order determining liability but leaving open the question of damages.  *See Kasuk v. Bakery & Confectionery Union & Indus. Int'l Pension Fund*, 791 F.2d 548, 553 (7th Cir. 1986);  *Int'l Controls Corp. v. Vesco*, 535 F.2d 742, 748 (2d Cir. 1976).

15

trial court's October 2005 order by removing computers, files, and data from LFI, and thus well within the one-year statute of limitations.

¶25 LFI filed its second sanctions motion in August 2006, less than three months after Green had violated the trial court's May 2006 order resulting from LFI's first motion for sanctions. The court never ruled on the second motion, and LFI renewed it with additional allegations in July 2007. The court found that LFI had not discovered those additional allegations—that Green had copied files from an LFI computer he had retained past the deadline set in the May 2006 order—until June 2007. *See City of Tucson v. Clear Channel Outdoor, Inc.*, 218 Ariz. 172, ¶ 10, 181 P.3d 219, 225-26 (App. 2008) ("[The] accrual of a cause of action occurs when the 'plaintiff knows or, in the exercise of reasonable diligence, should know the facts underlying the cause.'"), *quoting Gust, Rosenfeld & Henderson v. Prudential Ins. Co. of Am.*, 182 Ariz. 586, 588, 898 P.2d 964, 966 (1995).

¶26 Green asserts, however, that LFI was not sufficiently diligent in completing its forensic analysis of the computers he had obtained in violation of the October 2005 order and the LFI computer he had kept past the deadline imposed in the May 2006 order. But we find no legal authority suggesting LFI had a duty to exercise reasonable diligence to have the returned computers forensically analyzed to ensure Green had not further violated the court's orders. Nor does the record suggest the trial court's finding on this matter was erroneous. *See Hrudka v. Hrudka*, 186 Ariz. 84, 92, 919 P.2d 179, 187 (App. 1995) ("We will not disturb a trial court's factual findings unless clearly erroneous."). Thus, for each of Green's

16

violations of the court's orders, LFI filed its motion seeking contempt sanctions well within the one-year statute of limitations in § 12-865.[6]

Basis for Sanctions

¶27 The parties agree a trial court may dismiss a party's claims, strike its pleadings, and enter a default judgment against that party for failure to comply with the court's orders. Before reaching the question whether sanctioning Green was appropriate, however, we must first determine on what authority the trial court relied in doing so. As we noted above, *see* ¶ 11 *supra*, the answer to that question is not entirely clear.

¶28 The court referred to its "authority and discretion in enforcing obedience of its orders, including the inherent authority to sanction those who abuse the judicial process." Although the court also cited Rule 37(b), Ariz. R. Civ. P., the orders Green violated were not discovery orders falling within that rule. It also cited Rule 65(j)(1), Ariz. R. Civ. P., allowing it to find a party in contempt for failing to comply with an injunction. Section 12-864, governing civil contempt, does not explicitly authorize a trial court to dismiss an action, but it does provide that contempt "may be punished in conformity to the practice and usage of the common law."

---

[6]To the extent Green argues the trial court could not properly consider his previous violations of its orders when addressing LFI's final motion for sanctions, we disagree. The court stated in the May 2006 order that "[n]othing in [this order] will prevent any party from referring to the issues in the Motion [for sanctions] or renewing the Motion if warranted in any further court proceeding." That the court had entered orders attempting to address Green's noncompliance with its earlier orders does not preclude it from considering that noncompliance in later contempt proceedings.

¶29 "It is well established that [a trial] court has the authority to dismiss or to enter default judgment, depending on which party is at fault, for failure . . . to comply with its orders."[7] *Flaksa v. Little River Marine Constr. Co.*, 389 F.2d 885, 887, 887 nn.2-7 (5th Cir. 1968) (citing cases); *see Chambers v. NASCO, Inc.*, 501 U.S. 32, 44-45 (1991) (court may "fashion appropriate sanction for conduct" including "outright dismissal"); *Shepherd v. Am. Broad. Cos.*, 62 F.3d 1469, 1472 (D.C. Cir. 1995) (trial court has inherent authority to sanction contempt with dismissals and default judgments); *United States v. Shaffer Equip. Co.*, 11 F.3d 450, 461-62 (4th Cir. 1993) (same); *see also Phoenix Newspapers, Inc. v. Superior Court*, 101 Ariz. 257, 258, 418 P.2d 594, 595 (1966) ("[T]his Court has recognized that the power to punish for contempt is inherent in the courts."); *cf. Precision Components, Inc. v. Harrison, Harper, Christian & Dichter, P.C.*, 179 Ariz. 552, 556, 880 P.2d 1098, 1102 (App. 1993) (trial court has inherent authority to sanction misconduct of attorneys appearing before it). A party is in contempt of court if it "fail[s] to obey a lawful writ, process, order, [or] judgment of the court." § 12-864. Thus, it appears the trial court dismissed Green's cross-claim and struck his reply to LFI's counterclaim based on the court's inherent authority to sanction a failure to comply with its orders.[8]

---

[7]This authority is reflected in Rule 41(b), Ariz. R. Civ. P., which permits a trial court to dismiss an action for failure to comply with its orders.

[8]The trial court was not required to identify authority supporting its ruling, and we may uphold the trial court's ruling "if it is correct for any reason," *Dube v. Likins*, 216 Ariz. 406, n.3, 167 P.3d 93, 104 n.3 (App. 2007), as long as the trial court recites, as it did here, "the facts constituting the contempt." *State v. Cohen*, 15 Ariz. App. 436, 439, 489 P.2d 283, 286 (1971).

<u>Nexus Between Conduct and Merits of Claims and Defenses</u>

¶30 Green asserts that, when a court sanctions a party in contempt by terminating the action, due process is violated if "there is no nexus between the misconduct and the terminated claims and defenses." Green contends no such nexus exists here. To comply with notions of due process, when a court exercises its inherent authority to dismiss a claim for violations of its orders, "[t]here must be a nexus between the party's actionable conduct and the merits of the case." *Halaco Eng'g Co. v. Costle*, 843 F.2d 376, 381 (9th Cir. 1988); *see Fjelstad v. Am. Honda Motor Co.*, 762 F.2d 1334, 1338 (9th Cir. 1985) ("Due process limits the imposition of the severe sanctions of dismissal or default to 'extreme circumstances' in which 'the deception relates to the matters in controversy' and prevents their imposition 'merely for punishment of an infraction that did not threaten to interfere with the rightful decision of the case.'"), *quoting Wyle v. R.J. Reynolds Indus., Inc.*, 709 F.2d 585, 589, 591 (9th Cir. 1983).

¶31 This nexus requirement, or, more accurately, due process requirement, is derived from the United States Supreme Court's decisions in *Hammond Packing Co. v. Arkansas*, 212 U.S. 322, 349-54 (1909), and *Hovey v. Elliot*, 167 U.S. 409, 413-14 (1897). *See Wyle*, 709 F.2d at 589, *Phoceene Sous-Marine, S.A. v. U.S. Phosmarine, Inc.*, 682 F.2d 802, 806 (9th Cir. 1982). In *Hovey*, the Court held due process prevented the trial court from summarily striking a defendant's answer as punishment for failure to comply with the trial court's order that the party deposit into court the funds at issue in the lawsuit. 167 U.S. at

19

411-12, 413-14. That rule was substantially modified in *Hammond*, where the Court found no due process violation in striking the pleadings of a party that had failed to comply with a discovery order. The Court reasoned that the refusal to produce the requested materials "was but an admission of the want of merit in the asserted defense." 212 U.S. at 351; *see also Societe Internationale Pour Participations Industrielles Et Commerciales, S.A. v. Rogers*, 357 U.S. 197, 210 (1958).

¶32 The majority of cases applying the due process requirement described by *Hovey* and *Hammond* have addressed discovery violations, where the rule described in *Hammond* readily can be applied. *See, e.g., Valley Eng'rs Inc. v. Elec. Eng'g Co.*, 158 F.3d 1051, 1053, 1056 (9th Cir. 1998); *Halaco*, 843 F.2d at 378, 379-80; *Fjelstad*, 762 F.2d at 1336, 1338; *Prof'l Seminar Consultants, Inc. v. Sino Am. Tech. Exch. Council*, 727 F.2d 1470, 1473-74 (9th Cir. 1984); *Wyle*, 709 F.2d at 588-89. But we find no cases suggesting due process is not similarly required when imposing merits-terminating sanctions outside of the discovery context. Indeed, several appellate courts have relied on *Hovey*, *Hammond*, and their progeny when reviewing merits-terminating sanctions based on conduct not solely related to discovery. *See, e.g., Chen v. Stewart*, 123 P.3d 416, 428-29 (Utah 2005) (suborning perjury); *Estrada v. Speno & Cohen*, 244 F.3d 1050, 1058-59 (9th Cir. 2001) (failure to appear at depositions and court hearings); *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917 (9th Cir. 1987) (lying in depositions and recanting before trial to "reap a tactical advantage");

20

*Phoceene Sous-Marine*, 682 F.2d at 803-05 (lying to court in support of motion to continue trial).

¶33 Basing his argument on the due process requirement, Green asserts merits-terminating sanctions are unavailable unless the conduct "resulted in the absence of relevant (or potentially relevant) evidence, obstructing the opponent's ability to litigate the case."[9] This articulation of the due process requirement is too narrow. For example, merits-terminating sanctions comply with due process where the conduct for which sanctions were sought was intended to obtain a tactical advantage, even if an advantage was never actually realized. *See TeleVideo Sys.*, 826 F.2d at 917. Additionally, the due process requirement is satisfied when a court terminates a party's case as a sanction for a planned fraud on the court. *See Chen*, 123 P.3d at 428-29. The *Hammond* due process requirement is met in these cases because the sanctioned conduct permits an inference that the sanctioned party's position lacked merit—just as when the misconduct entails withholding or hiding evidence.

¶34 Nor do we read *Hammond* as requiring the sanctioned conduct to potentially interfere with evidence that would, or could, have been presented during the litigation. Examples of such conduct include refusing to disclose evidence, refusing to attend depositions, or suborning perjury. The Court in *Hammond* did not say its conclusion was based on the materiality of the undisclosed evidence, but rather that a court may presume

---

[9]For purposes of this argument, we will assume, without deciding, that the due process requirement as Green has articulated it was not met here.

materiality from the party's refusal to produce it.  *See* 212 U.S. at 351.  Thus, *Hammond* reflects a "constructive waiver" of due process, *Ins. Corp. of Ir. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 706 (1982), based on a reasonable inference drawn from the party's conduct that its position is meritless.  *See also id.* ("Due process is violated only if the behavior of the defendant will not support the *Hammond Packing* presumption.").  We see no reason to limit constructive waiver to misconduct involving material evidence when other misconduct can be equally suggestive of the relative merits of a party's position—essentially, when a party with a meritorious case or defense should have no need to engage in such activity.

¶35        We therefore conclude that, if the sanctioned conduct invites a negative inference about the merits of the party's claims or defenses, the due process requirement of *Hovey* and *Hammond* is met, and merits-terminating sanctions are constitutionally appropriate.  *See Chen*, 123 P.3d at 429 ("[A] court has the inherent authority to strike a party's pleadings and enter a default judgment if the party engages in conduct designed to improperly influence the court's decision on the merits of the case, such as perjury or obstruction of justice, or if the conduct itself tends to demonstrate bad faith *or a lack of merit*.") (emphasis added).  Accordingly, we now address whether Green's conduct in the trial court permits an inference that his claims and defenses lack merit.

¶36        Here, the litigation concerns the nature of Green's continuing interest and role in LFI, including his status as a shareholder and director of the company.  Although we find

22

no directly applicable authority, it seems plain that, when a party violates court orders in order to control or harm the assets at stake in the litigation, such action permits an inference that the party's position on the merits is weak.[10] A party with a meritorious claim or defense would have no need to violate court orders to gain or retain control over the asset in controversy and could await a decision on the merits permitting it to do so lawfully. The parties here agreed to the orders the trial court entered to protect LFI's assets during the litigation. Green, however, violated one such order to improperly obtain and another to retain LFI's property—including proprietary intellectual property that Green himself stated was the "life" of the company, without which LFI would be "[no] good." Moreover, an LFI employee testified that possession of the property would give a party seeking to "re-engineer or re-create" LFI's proprietary artwork a "big jump." Green's acquisition of the property means he was able to exercise some measure of control over LFI's proprietary assets and, therefore, the fate of the company.[11]

---

[10]We recognize that the property at issue in *Hovey* was the same money the party in contempt had refused to deposit with the court. 167 U.S. at 411. That situation is arguably analogous to the one before us where Green has sought to retain control over assets at the heart of the contest over control of LFI. But the Supreme Court has never decided whether it would now reach the same result it did in *Hovey* given its substantial modification of that holding in *Hammond*. The situation in *Hovey* is nonetheless distinct. The party in *Hovey* merely maintained control of an asset in violation of a court order. It did not, as did Green, actively and improperly seek to obtain an asset not in its possession—conduct even more indicative of the weakness of Green's claims and defenses. Additionally, the assets at issue here are proprietary and unique, placing a wrongful possessor in a position to do significant harm to LFI's business interests.

[11]That LFI would have legal remedies against Green should he use or disclose its intellectual property does not change our analysis. The question is not whether Green would

23

¶37 Further, Green's continued conduct strongly suggests he would have been unwilling to comply in any meaningful way with future trial court orders, including those resulting from litigation on the merits. *See Chen*, 123 P.3d at 429 (dismissal appropriate when party's conduct demonstrated bad faith). Indeed, the trial court referred to this possibility, stating Green had been "cavalier" about the "entire process, from the beginning right through until today." The court expressed concern that Green thought himself "above the process" and ultimately determined lesser sanctions would not ensure compliance with its orders. *See Mindek v. Rigatti*, 964 F.2d 1369, 1370 (3d Cir. 1992) (dismissal appropriate "where the district court judge has properly determined that no other sanction would adequately ensure future compliance"). A court's inherent authority to sanction parties for failing to comply with its orders exists, in part, to prevent "'disobedience [of] the orders of the Judiciary, regardless of whether such disobedience interfered with the conduct of trial.'" *Chambers*, 501 U.S. at 44, *quoting Young v. United States ex rel. Vuitton et Fils, S.A.*, 481 U.S. 787, 798 (1987); *see also Gulf Homes, Inc. v. Beron*, 141 Ariz. 624, 628-29, 688 P.2d 632, 636-37 (1984) (affirming discovery sanctions, in part, to prevent "parties to other lawsuits" from "feel[ing] free[] . . . to flout other discovery orders of other district courts"). The position Green advocates would allow unscrupulous litigants to violate at will, and

---

ultimately be successful in using the property, but whether his improper attempt to control the assets at stake in the litigation permits the inference that his claims and defenses are meritless.

without fear of dismissal, court orders seeking to protect another party's interests if those interests were unrelated to discoverable evidence. We decline to adopt such an approach.

¶38            Green additionally argues dismissal sanctions imposed "where the misconduct has no impact on the opponent's ability to litigate the merits" are "purely punitive" and therefore prohibited. But this argument is logically flawed. Whether the misconduct has affected litigation on the merits has no correlation to whether the sanctions imposed are punitive or coercive. In any event, the sanctions here were not purely punitive. *Cf. Korman v. Strick*, 133 Ariz. 471, 473-74, 652 P.2d 544, 546-47 (1982) (distinguishing criminal and civil contempt; criminal contempt sanctions "solely" punitive while civil contempt sanctions coercive).[12] The threat of sanctions promotes compliance with a court's orders even if the sanctions threatened are never imposed. Green's failure to avoid the sanctions here does not render their imposition improper merely because compliance now, after ample opportunity to avoid the sanctions, would not reverse the sanctions' effect. Otherwise, dismissal would never be an appropriate sanction for civil contempt. That is clearly not the law.

¶39            For the reasons stated, under the circumstances presented here, the trial court's dismissal of Green's claims and entry of default against him complied with due process. Green's contumacious conduct permitted the court to infer that his claims and defenses were

---

[12]Despite this distinction in *Korman*, we note that § 12-864 permits a trial court to "punish[]" civil contempt.

25

meritless and thus find he had constructively waived a hearing on their merits. *See Ins. Corp. of Ir.*, 456 U.S. at 706.

Propriety of Dismissal

¶40 That the dismissal here does not violate due process does not end our inquiry. We agree with Green that, as a general proposition, sanctions for failure to obey a trial court's orders should be limited to achieve their desired result. *See Hays*, 205 Ariz. 99, ¶ 17, 67 P.3d at 698. Moreover, a claim should not be dismissed absent extreme circumstances. *See Birds Int'l Corp. v. Ariz. Maint. Co.,* 135 Ariz. 545, 547, 662 P.2d 1052, 1054 (App. 1983); *Flaksa*, 389 F.2d at 887. Arizona courts prefer that claims be adjudicated on their merits. *Cf. Assoc'd Aviation Underwriters v. Wood*, 209 Ariz. 137, ¶ 147, 98 P.3d 572, 614 (App. 2004). We review the imposition of sanctions for an abuse of discretion. *See Hays v. Gama*, 205 Ariz. 99, ¶ 17, 67 P.3d 695, 698 (2003); *Flaksa*, 389 F.2d at 887. Whether a trial court has the discretion to impose the sanction of dismissal depends on whether the specific facts and circumstances of the case are sufficiently extreme to warrant such a sanction. *See Birds Int'l Corp.*, 135 Ariz. at 547, 662 P.2d at 1054; *Flaksa*, 389 F.2d at 887.

¶41 There is little Arizona law outside the discovery context that affords guidance on what factors a trial court must consider before dismissing an action for the clamant's failure to comply with its orders. *See, e.g., Carman v. Hefter*, 136 Ariz. 597, 601, 667 P.2d 1312, 1316 (1983) (dismissal proper under Rule 41(b), Ariz. R. Civ. P., where party mentioned insurance twice during trial in violation of court order); *Goodman v. Cushman*,

26

92 Ariz. 276, 278-79, 376 P.2d 394, 395 (1962) (Rule 41(b) dismissal improper where party in "substantial compliance" with court's order to correct complaint to omit certain material).

¶42 However, in addressing the propriety of sanctions for discovery violations under Rule 37(b), Arizona courts have identified several factors that are equally relevant here. For example, in *Gulf Homes*, our supreme court upheld dismissal as a sanction when a party had acted in "'flagrant bad faith'" by refusing to respond to questions during a deposition. 141 Ariz. at 629, 688 P.2d at 637. The court noted that the questions asked "were material to the claims" and that the party's refusal to answer injected delay and "exacerbated the costs inherent in the litigation." *Id.* Even assuming Green's failure to comply with the trial court's orders here did not affect LFI's ability to litigate its claims, the remaining factors the supreme court discussed in *Gulf Homes* are present. The trial court found Green had willfully and repeatedly failed to comply with its orders and had "filed a declaration" stating that he was no longer in possession of any LFI materials despite having failed to return ten compact discs containing material copied from an LFI computer. Moreover, Green's conduct plainly delayed the proceedings and greatly increased the expense of the litigation: both parties filed voluminous motions in support of and in opposition to sanctions, and the court held a lengthy evidentiary hearing to explore Green's conduct.

¶43 In *Nesmith v. Superior Court*, 164 Ariz. 70, 71-72, 790 P.2d 768, 769-70 (App. 1990), Division One of this court reversed a dismissal sanction imposed for discovery

27

violations because: (1) the trial court erred as a matter of law by requiring the sanctioned plaintiff to turn over original business records; (2) the trial court did not expressly find "that the plaintiff personally, as opposed to the plaintiff's attorney, obstructed discovery"; (3) the trial court did not "thoroughly consider other, less severe sanctions"; and (4) the sanctioned party did not violate a court order and had, albeit tardily, complied with the discovery rules before the defendant filed a motion to compel discovery. Here, in contrast, the trial court expressly found that Green, not his attorney, was responsible for the violations. Moreover, Green did not violate procedural rules or discovery deadlines but instead ignored a preliminary injunction and subsequent court orders seeking to enforce that injunction—orders with which Green still has never fully complied. And the court expressly found lesser sanctions would be ineffective.

¶44     We draw further guidance from federal courts' discussions of a trial court's inherent authority to dismiss cases for contumacious conduct. For example, in *Shaffer*, 11 F.3d at 462-63, the Fourth Circuit Court of Appeals stated:

> [B]efore exercising the inherent power to dismiss a case, a court must consider the following factors: (1) the degree of the wrongdoer's culpability; (2) the extent of the client's blameworthiness if the wrongful conduct is committed by its attorney, recognizing that we seldom dismiss claims against blameless clients; (3) the prejudice to the judicial process and the administration of justice; (4) the prejudice to the victim; (5) the availability of other sanctions to rectify the wrong by punishing culpable persons, compensating harmed persons, and deterring similar conduct in the future; and (6) the public interest.

28

Other courts have enumerated similar factors. *See, e.g., Chavez v. City of Albuquerque*, 402 F.3d 1039, 1044 (10th Cir. 2005) (prejudice to other party, interference with judicial process, litigant's culpability, advance warning of possibility of dismissal, efficacy of lesser sanctions); *In re Amtrak*, 136 F. Supp. 2d 1251, 1267 (S.D. Ala. 2001) (collecting cases and listing factors: prejudice to other party, interference with judicial process, relationship to merits, culpability of violating party, willful or bad faith conduct, warning of dismissal as sanction, availability of lesser sanctions, public interest); *Anheuser-Busch, Inc. v. Natural Beverage Distribs.*, 69 F.3d 337, 348 (9th Cir. 1995) (public interest "in expeditious resolution of litigation," court's need to manage docket, risk of prejudice to party seeking sanctions, public policy favoring disposition on the merits, availability of lesser sanctions, bad faith of violating party, relationship between conduct and merits); *Poulis v. State Farm Fire & Cas. Co.*, 747 F.2d 863, 868 (3d Cir. 1984) (personal responsibility of party, prejudice to other party, history of dilatory conduct, willfulness or bad faith, other sanctions, merits of claim or defense).

¶45        Synthesizing these cases, we conclude the most relevant factors courts have typically considered are: (1) prejudice to the other party, both in terms of its ability to litigate its claims and other harms caused by the disobedient party's actions; (2) whether the violations were committed by the party or by counsel; (3) whether the conduct was willful or in bad faith and whether the violations were repeated or continuous; (4) the public interest in the integrity of the judicial system and compliance with court orders; (5) prejudice to the

29

judicial system, including delays and the burden placed on the trial court; (6) efficacy of lesser sanctions; (7) whether the party was warned that violations would be sanctioned; and (8) public policy favoring the resolution of claims on their merits. This list, of course, is not exclusive. A trial court may identify and address any other relevant circumstances.

¶46        Most of the factors described above are present here. Again, it was Green personally, not his attorney, who continuously and willfully violated the trial court's orders and made misrepresentations to the court about those violations. Green's transgressions resulted in significant delays and expensive, unnecessary litigation requiring extensive filings and lengthy evidentiary hearings that included expert testimony. His conduct thus burdened the trial court and hindered timely resolution of the merits of the claims.[13] The orders Green violated were in place to protect LFI's significant interest in its property, both physical and intellectual. Green contests none of this, arguing only that dismissal sanctions are inappropriate because his violations did not interfere with LFI's ability to litigate the case. We recognize that such prejudice is one factor a trial court may consider before imposing sanctions and that prejudice to LFI's ability to litigate its claims is not apparent from the record. A finding of prejudice, however, is not required to support dismissal. *See Halaco*

---

[13]Green cites *Hernandez v. City of El Monte*, 138 F.3d 393, 399 (9th Cir. 1998), for the proposition that "[t]he costs of additional litigation caused by a party's misconduct are insufficient prejudice to support dismissal." But that does not make costs and delays irrelevant to the analysis. The Ninth Circuit also stated in *Hernandez* that excessive delays and consumption "'of the court's valuable time'" favored dismissal. *Id., quoting Ferdik v. Bonzelet*, 963 F.2d 1258, 1261 (9th Cir. 1992).

*Eng'g Co.*, 843 F.2d at 382 (finding of prejudice "purely optional"). Even assuming the absence of that factor, the court did not abuse its discretion given the presence of several other factors favoring dismissal.

¶47 Green also argues the trial court failed to consider whether LFI was prejudiced and, "[f]or this reason alone, the trial court's Ruling should be vacated." But the court clearly did consider the harm Green's conduct had caused to LFI, finding there had been "damage to [its] intellectual property." Moreover, that the court made no finding of prejudice to LFI's ability to litigate the action does not require the conclusion the court wholly failed to consider that factor. It is equally possible the court considered it but did not find it dispositive. Additionally, whether dismissal sanctions are appropriate is a fact-intensive inquiry and may involve consideration of many factors, including some we have not identified here. We see no reason for a trial court to articulate its findings on every conceivable factor. Accordingly, for the reasons stated, we conclude the court did not abuse its discretion in striking Green's reply, dismissing his cross-claim, and entering judgment in favor of LFI.

Termination of Directorship

¶48 Green argues the trial court erred in terminating him as director of LFI because it explicitly rejected a "finding of fraud" and failed to make any other findings permitting his removal under A.R.S. § 10-809. We review de novo questions of law, including the interpretation of statutes, but will not disturb a trial court's factual findings unless they are

31

clearly erroneous.  *See Spaulding v. Pouliot*, 218 Ariz. 196, ¶ 8, 181 P.3d 243, 246 (App. 2008).

**¶49**        In its counterclaim against Green, LFI sought Green's removal as director of LFI pursuant to § 10-809(A). After striking Green's reply to LFI's counterclaim and entering his default, the trial court "granted judgment in [LFI's] favor . . . except for the finding of fraud" relating to LFI's claim that Green should be removed as a director pursuant to § 10-809.  Nonetheless, the trial court terminated "Green's status as director of LFI . . . for a period of two years." *See* § 10-809(B).

**¶50**        "An entry of default establishes as proven all well-pleaded facts." *Moran v. Moran*, 188 Ariz. 139, 146, 933 P.2d 1207, 1214 (App. 1996).  It does not, however, hold the party in default "to have admitted conclusions of law." *Id.*  Accordingly, "[i]f a complaint fails to state facts legally entitling plaintiff to a recovery, a default judgment rendered thereon is void." *Price v. Sunmaster*, 27 Ariz. App. 771, 774, 558 P.2d 966, 969 (1976).  The trial court's judgment in favor of LFI on its claim to have Green removed as a director was therefore only proper if LFI's counterclaim alleged facts sufficient to entitle LFI to relief under § 10-809(A).  *See Price*, 27 Ariz. App. at 774, 558 P.2d at 969.

**¶51**        Section 10-809(A) permits judicial removal of the director of a corporation if the court finds (1) the director "engaged in fraudulent conduct or intentional criminal conduct" and (2) "[r]emoval is in the best interest of the corporation."  In its counterclaim, LFI enumerated "a series of actions" Green had undertaken "in furtherance of [his] own

32

personal interests," alleged those actions were "fraudulent," and asserted, based on Green's actions, "his continued association with LFI . . . is not in [its] best interests."

¶52    Because the trial court entered default against Green, LFI's allegation concerning its best interests is deemed admitted. *See Moran*, 188 Ariz. at 146, 933 P.2d at 1214. As we explain, however, and as the court implicitly found, LFI's assertion that Green's actions were fraudulent was not a "well-pleaded" fact that the entry of Green's default could be deemed to have established. *See id.*

¶53    An allegation of fraud must be pled with particularity. Ariz. R. Civ. P. 9(b). "Although there is no 'magic language' required to state a claim for fraud," a claimant must "plead all the essential elements of . . . fraud" in his complaint. *Linder v. Brown & Herrick*, 189 Ariz. 398, 404-05, 943 P.2d 758, 764-65 (App. 1997). Fraud may be either actual or constructive. *See Brazee v. Morris*, 68 Ariz. 224, 227-28, 204 P.2d 475, 476-77 (1949). A showing of actual fraud requires:

> (1) a representation, (2) its falsity, (3) its materiality, (4) the speaker's knowledge of its falsity or ignorance of its truth, (5) the speaker's intent that the information should be acted upon by the hearer and in a manner reasonably contemplated, (6) the hearer's ignorance of the information's falsity, (7) the hearer's reliance on its truth, (8) the hearer's right to rely thereon, and (9) the hearer's consequent and proximate injury.

*Taeger v. Catholic Family & Cmty. Servs.*, 196 Ariz. 285, ¶ 28, 995 P.2d 721, 730 (App. 1999); *see also Echols v. Beauty Built Homes, Inc.*, 132 Ariz. 498, 500, 647 P.2d 629, 631 (1982). Constructive fraud, in contrast, is "'a breach of legal or equitable duty which,

33

without regard to moral guilt or intent of the person charged, the law declares fraudulent because the breach tends to deceive others, violates public or private confidences, or injures public interests.'" *Dawson v. Withycombe*, 216 Ariz. 84, ¶ 72, 163 P.3d 1034, 1057 (App. 2007), *quoting Lasley v. Helms*, 179 Ariz. 589, 591, 880 P.2d 1135, 1137 (App. 1994). Although constructive fraud "does not require a showing of intent to deceive or dishonesty of purpose, it does require a fiduciary or confidential relationship," a "breach of duty by the person in the confidential or fiduciary relationship," and that the person in breach "induce[d] justifiable reliance by the other to his detriment." *Dawson*, 216 Ariz. 84, ¶ 72, 163 P.3d at 1057 (citation omitted).

**¶54** Despite its enumeration of Green's allegedly fraudulent activities, LFI failed to allege in its counterclaim any facts constituting the elements of actual fraud. *See Taeger*, 196 Ariz. 285, ¶ 28, 995 P.2d at 730. Regarding constructive fraud, although LFI's counterclaim does assert Green breached fiduciary duties he owed LFI, it does not allege any facts that would support a finding that Green induced LFI to rely on him to its detriment. *Dawson*, 216 Ariz. 84, ¶ 72, 163 P.3d at 1057. Because LFI failed to plead "the circumstances constituting fraud . . . with particularity" as required by Rule 9(b), the trial court properly declined to find that the entry of default established LFI's fraud allegation as proven. *See Moran*, 188 Ariz. at 146, 933 P.2d at 1214.

**¶55** Notwithstanding LFI's failure to properly plead—and the trial court's correct refusal to find—fraud, the court, without explanation, entered judgment in LFI's favor,

removing Green as director pursuant to § 10-809.[14] In the absence of fraud, § 10-809 permits a director's removal only if he or she engaged in intentional criminal activity. But LFI did not plead any facts alleging that Green had engaged in intentional criminal conduct. Because LFI failed to allege facts sufficient to entitle it to relief under § 10-809, the court erred by removing Green as a director of LFI, and we must therefore vacate that portion of its judgment. *Price*, 27 Ariz. App. at 774, 558 P.2d at 969.

Fraud Against Computers Claim

¶56 Green contends the trial court's rejection of LFI's fraud allegation also precludes judgment against him on LFI's claim pursuant to 18 U.S.C. § 1030. That statute governs civil and criminal liability for "fraud and related activity in connection with computers." 18 U.S.C. § 1030. None of its subsections, however, require a finding of actual fraud. Green apparently refers to subsection (a)(4), which requires a finding that a person accessed a protected computer with "intent to defraud" and in furtherance of "the intended fraud." Assuming, arguendo, that the court's rejection of LFI's fraud allegation also implicitly rejected any assertion of intent to defraud, however, other subsections of 18 U.S.C. § 1030 require no such finding. For example, subsection (a)(5)(C) prohibits intentional unauthorized access "caus[ing] damage and loss." In any event, LFI did not explicitly allege

---

[14]LFI suggests the trial court terminated Green's directorship as a sanction for his noncompliance with court orders and, therefore, the court was not bound by the requirements of § 10-809. But § 10-809 governs judicial removal of corporate directors, and we neither find nor has LFI cited, any authority suggesting a trial court may circumvent the statutory prerequisites for removal by characterizing its ruling as a sanction.

fraud in this portion of its complaint, instead asserting Green had damaged it by "absconding with and retaining information belonging to LFI." Pending LFI's proof of damages, this conduct falls within 18 U.S.C. § 1030(a)(5)(C), and the court properly entered default on that claim.

Copyright Infringement Claim

**¶57** Last, Green contends the trial court lacked subject matter jurisdiction to enter judgment in favor of LFI on its copyright infringement claim brought pursuant to Title 17 of the United States Code. He further asserts the court's judgment regarding that claim must therefore be vacated. As Green notes, subject matter jurisdiction cannot be waived and may be raised at any stage of a proceeding. *See Switchenberg v. Brimer*, 171 Ariz. 77, 82, 828 P.2d 1218, 1223 (App. 1991). "A judgment may be attacked as void" if the court that entered it lacked subject matter jurisdiction. *In re Adoption of Hadtrath*, 121 Ariz. 606, 608, 592 P.2d 1262, 1264 (1979). Whether a judgment is void is a question of law we review de novo. *In re Estate of de Escandon*, 215 Ariz. 247, ¶ 7, 159 P.3d 557, 559 (App. 2007).

**¶58** Pursuant to 28 U.S.C. § 1338(a), federal district courts alone have "original jurisdiction of any civil action arising under any Act of Congress relating to . . . copyrights." This includes jurisdiction over claims, like LFI's, that arise out of Title 17, U.S.C. *See id.* LFI does not suggest otherwise or provide any response to Green's assertion. *See In re 1996 Nissan Sentra*, 201 Ariz. 114, ¶ 7, 32 P.3d 39, 42 (App. 2001) (failure to address in answering brief issues raised on appeal "can be considered a confession of error").

36

Accordingly, we vacate the portion of the trial court's judgment relating to LFI's copyright infringement claim as void for lack of subject matter jurisdiction.

**Disposition**

¶59        For the reasons stated above, we vacate those portions of the trial court's ruling granting LFI judgment on its claim of copyright infringement and terminating Green's LFI directorship.  We affirm the remainder of the judgment.[15]

_____

                    J. WILLIAM BRAMMER, JR., Judge

CONCURRING:

_____

JOHN PELANDER, Chief Judge

H O W A R D, Judge, dissenting.

¶60        I must respectfully dissent from the majority because only the legislature can change a statute and only the supreme court can change its interpretation of a statute.  Under

_____

[15]Because we affirm the trial court's entry of default as to the buy-sell agreement, we do not reach LFI's argument that the issue is moot.

the current state of the law, this court does not have jurisdiction over this appeal from the trial court's civil contempt order issued under A.R.S. § 12-864.[16]

¶61        "'[T]he right to appeal exists only by force of statute.'"  *Osuna v. Wal-Mart Stores, Inc.*, 214 Ariz. 286, ¶ 9, 151 P.3d 1267, 1270 (App. 2007), *quoting Cordova v. City of Tucson*, 15 Ariz. App. 469, 470, 489 P.2d 727, 728 (1971) (alteration in *Osuna*).  In *Ex parte Wright*, 36 Ariz. 8, 13, 281 P. 944, 946 (1929), our supreme court said:  "Cases falling within section 4474 [now A.R.S. § 12-864] . . . must be governed by the 'practice and usage of the common law.'  According to such practice and usage the contemnor is not entitled to a jury trial nor to an appeal or to bail."  *See also Van Dyke v. Superior Court*, 24 Ariz. 508, 537, 544, 211 P. 576, 585-86, 588 (1922).  Additionally, in *State v. Mulligan*, 126 Ariz. 210, 216, 613 P.2d 1266, 1272 (1980), the court stated:  "We find no authorization for such an appeal from the contempt charges, either by statute or rules of this court.  Findings of contempt are non-appealable orders."

¶62        We have no authority to ignore or alter supreme court pronouncements. *Phoenix Newspapers, Inc. v. Dep't of Corrs.*, 188 Ariz. 237, 241, 934 P.2d 801, 805 (App. 1997).  Section 12-864 still contains the same language requiring that contempt cases be governed by the "practice and usage of the common law."  And the contempt statutes still do

---

[16]The majority points out some ambiguity in the record as to whether the trial court's order was a contempt order under § 12-864 or a discovery sanction.  *Supra*, ¶ 11.  But Green himself argues on appeal that the order was a contempt order governed by § 12-864.  Moreover, as the majority later discusses, the orders that Green violated were not discovery orders.  *Supra*, ¶¶ 27-29.

not explicitly provide for an appeal from civil contempt, although they do provide for an appeal from criminal contempt. *See* A.R.S. §§ 12-861, 12-863. Therefore, according to the binding precedent in *Wright*, which has never been overruled, the legislature has specifically provided that no appeal will lie from a civil contempt order.

¶63 The order here determines a party's liability, and it has Rule 54(b), Ariz. R. Civ. P., language making it procedurally a final order. Most final orders are substantively appealable pursuant to A.R.S. § 12-2101(B), and interlocutory orders determining a party's rights may be appealable under § 12-2101(G). But a specific statute controls over a general statute. *See La Canada Hills Ltd. P'ship v. Kite,* 217 Ariz. 126, ¶ 9, 171 P.3d 195, 198 (App. 2007). By requiring civil contempts to be "punished in conformity to the practice and usage of the common law," § 12-864, the legislature has specifically directed that such contempt orders are substantively not appealable. *See Wright*, 36 Ariz. at 13, 281 P. at 946. Accordingly, the general appeal statute cannot confer substantive appealability on an order that the legislature has specifically determined is not subject to appeal.

¶64 Moreover, the general appeal statute, § 12-2101, existed in its present form when the supreme court issued *Mulligan*. The supreme court did not say that, if a contempt order was case-dispositive, it was exempt from the broad language that "[f]indings of contempt are non-appealable orders" and was instead governed by the general appeal statute. *Mulligan*, 126 Ariz. at 216, 613 P.2d at 1272. And I do not see how the nature of the sanction imposed by the nonappealable contempt order can invest this court with jurisdiction

39

the legislature has withheld.  Additionally, as stated above, we have no power to ignore or alter supreme court pronouncements.  *See Phoenix Newspapers*, 188 Ariz. at 241, 934 P.2d at 805.  Nor can we guess how that court might resolve an issue in the future.  *See State v. Keith*, 211 Ariz. 436, ¶ 3, 122 P.3d 229, 230 (App. 2005).

**¶65**    I would dismiss Green's appeal for lack of jurisdiction and, therefore, I dissent.

_____

JOSEPH W. HOWARD, Presiding Judge